## R. M. WYNNE v. THE STATE NATIONAL BANK OF FORT WORTH ET AL.

### No. 3073.

1. **Attachment Upon Mortgaged Lands.**—The legal title of land conveyed to a trustee to secure a debt remains in the grantor until sold by the trustee. Before the sale the legal title can be seized and sold by creditors of the grantor subject to the lien created by the deed of trust. An attachment levied upon the land after the execution of the deed of trust, and before the trust sale, creates a lien in favor of the plaintiff in the attachment against all others. If the attachment lien be established by judgment of the court the effect is to appropriate any excess in the proceeds of the trust sale.

2. **Same—Effect of Trustee's Sale.**—A sale by the trustee passes title as against a junior attachment lien. The holder of the attachment lien would be entitled to satisfaction out of the excess of funds in hands of the trustee after satisfying the debt to secure which the trust was executed. This right would not be lost by an attempt to sell under the attachment after the sale by the trustee.

3. **Pleadings.**—See discussion of pleadings defective in certainty as to date of fixing the attachment lien, the foundation of the pleader's right.

4. **Exhibits.** — Exhibits attached to pleadings will not relieve the pleader from making the proper allegations of which the exhibits may be the evidence in whole or in part. They may be referred to in aid and explanation of the allegations in the petition. Rule 19 for District Courts.

5. **Rules for District Courts—Rule 17.**—Rule 17 requires that in passing upon general exceptions every reasonable intendment arising upon the pleading excepted to shall be indulged in favor of its sufficiency. See example.

ERROR from Tarrant. Tried below before Hon. R. J. BOYKIN, Special District Judge.

The opinion states the case.

*Ball, Wynne & McCart,* and *N. A. Stedman,* for plaintiff in error.—1. Where, after property has been mortgaged, another lien is acquired on it and it is subsequently sold under a foreclosure of the first lien, the surplus remaining, if any, of the proceeds after satisfying the first lien should be applied to the payment of the debts secured by the subsequent lien which attaches itself to such proceeds. 2 Jones on Mort., secs. 1935, 2929, 1929; Eddy v. Smith, 13 Wend., 488; 2 Am. Law Register (N. S.), p. 743; Cook v. Dillon, 9 Iowa, 407.

2. One who obtains a lien on another's property acquires no right or title in or to the property or its proceeds without proceeding to enforce his lien by sale. 2 Pome. Eq. Jur., sec. 1233; Buchanan v. Monroe, 22 Texas, 537.

3. When a creditor may by virtue of a lien resort for the satisfaction of his demand to two securities, and another creditor may resort to only one of them, the former should exhaust that security upon which the latter has no claim before going against the other fund. Ayres v. Cayce, 10 Texas, 99; 3 Pome. Eq. Jur., sec. 1414.

4. The court erred in sustaining said demurrer, because if the sale of said land was not necessary as to either J. W. or H. J. Zook, and if the sale by Sommerville barred the equity of redemption, leaving nothing for intervenor's sale to operate on, then, as to the land from which said Sommerville obtained the fund in dispute, intervenor acquired no title by his purchase thereof under his order of sale, and received nothing thereby as a credit on his judgment. Freem. on Ex., sec. 54; Townsend v. Smith, 20 Texas, 465; Jackson v. Bowen, 7 Cowen, 13.

*Hunter, Stewart & Dunklin,* for defendants in error.—Wynne's sale extinguished his lien. 2 Jones on Mort., sec. 953; Makibben v. Arndt, 10 S. W. Rep., 642; Hanson v. Dunton, 35 Minn., 189.

HENRY, ASSOCIATE JUSTICE.—J. W. Zook executed a deed of trust upon certain tracts of lands to secure a debt due by him to the Dundee Mortgage and Trust Investment Company, Limited, in which W. F. Sommerville was appointed trustee with power to sell for the payment of the debt, and afterward he conveyed to H. J. Zook five tracts of the land covered by the deed of trust.

On the 20th day of November, 1886, one Abe Rothschild caused to be issued out of the District Court of Galveston County, in a suit in which he was plaintiff and J. W. and H. J. Zook were defendants, a writ of attachment, which was on the 22d day of November, 1886, duly levied upon all of the land included in the said deed of trust. On the 8th day of April, 1887, a judgment was rendered in said suit in favor of Rothschild and against said J. W. and H. J. Zook for the sum of $2352.15, and foreclosing the lien upon all of the property attached.

On the 13th day of June, 1887, Rothschild, for a valuable consideration, transferred said judgment to R. M. Wynne. Sommerville sold under the deed of trust, and having received the purchase money, conveyed the lands to the purchaser, and after having paid its debt to the Dundee Mortgage and Trust Investment Company, Limited, and all charges, he held, on the 26th day of November, 1888, of the proceeds of the sale, the sum of $2953.93.

On the last named date the State National Bank of Fort Worth caused Sommerville to be served with a writ of garnishment sued out by the bank upon a judgment which it had previously obtained against J. W. Zook. On the same day Wynne notified the trustee of his purchase of the Rothschild judgment, and claimed the money.

Sommerville answered the writ of garnishment, saying that he held the above stated sum of money, and explaining from what source he had received it.

On the 19th day of December, 1888, an order of sale was issued out of the District Court of Galveston County on the Rothschild judgment, then owned and controlled by Wynne, under which the attached property was duly sold by the sheriff on the first Tuesday in March, 1889, to Wynne.

Wynne was permitted to intervene in the garnishment suit, and he filed a petition alleging substantially the foregoing facts, and praying for a judgment for so much of the money in the hands of the trustee as was sufficient to satisfy his judgment. The court sustained a demurrer filed by the plaintiff to the pleadings of the intervenor, and, as he declined to amend further, dismissed his petition.

The ground of the demurrer sustained by the court is stated in the demurrer as follows: "Because it says that the same (the intervenor's petition) is insufficient in law, and shows on its face that said intervenor Wynne had exhausted his attachment lien by sale of the lands mentioned in his said plea, and has no lien whatever on the funds in the hands of said W. F. Sommerville."

The contention of the appellee is stated as follows in its brief filed in this court:

"We contend that Wynne's plea of intervention shows affirmatively that he has no right to the surplus funds in the hands of Sommerville, the garnishee.

"We admit, for the purposes of this appeal, that on the day Sommerville made the sale of the lands, and received into his hands the surplus over which this controversy arises, Wynne had a decretal or judgment lien on this surplus, perhaps superior to the bank's garnishment lien, growing out of his judgment foreclosing his attachment lien on the lands; and if he had then filed his plea of intervention setting up his attachment of the lands and judgment of foreclosure, and alleged his lien to be in full force and not extinguished, discharged, or

dormant, and asked that it be transferred from the land to the surplus, he would have been entitled to recover, or at least his plea would not have been subject to this demurrer, for his lien being in full force and not extinguished by a sale of the property upon which it rested, would have attached itself to the proceeds or surplus.

"But the plea on its face shows that after the 26th day of November, 1888 (which was the day Sommerville sold the lands under his deed of trust), namely, on the 19th day of December, 1888, an order of sale on Wynne's judgment was issued, and on January 29, 1889, it was levied on all the lands which had been attached, and on the first Tuesday in March, 1889, they were all sold by the sheriff under said levy, and, except one tract, were bought in by Wynne at the sale, and he now holds deeds from the sheriff of Parker County to all of said lands that were sold by Sommerville; and that at that sale the lands brought $510.

"This sale, we contend, forever extinguished his lien, and left the bank's garnishment lien, which was fixed on the 26th day of November, 1888, in full force upon the surplus in Sommerville's hands.

"He could not sell the land and claim the surplus, too. He had the right to elect upon which he would foreclose his lien."

While the demurrer was a general one, we think there is no room for doubting on what ground it was sustained by the court. The legal title of the land included in the deed of trust remained in the grantors until it was sold by the trustee, and it was conveyed by him to the purchaser at his sale. Before the sale by the trustee the legal title could be seized and sold by the creditors of its owners subject to the lien created by the deed of trust. The attachment issued upon the Rothschild judgment having been duly levied upon it, and being first in time, created in favor of the owner of the judgment a valid lien upon the legal title prior to all others. That lien was established by the final judgment in the District Court of Galveston County in favor of Rothschild. The substantial effect of the lien when enforced was to appropriate the excess in value of the land over what was required to satisfy the deed of trust. If the land had not been sold by the trustee at the date of the judgment, the proper decree to enter in the attachment suit was to order the sale of the legal title. The right in such cases is plain, and the only question that can arise is upon the remedy. If the land had not been previously sold by the trustee it would have been proper to sell it under the judgment, and the purchaser would have acquired the right to the surplus when the land was sold by him. After the land had been sold by the trustee, the legal title becoming thereby vested in the purchaser from him, the lien of the judgment growing out of the attachment was transferred to the surplus remaining after the satisfaction of the trust deed, and its collection could have been enforced by some appropriate proceeding if not voluntarily paid over by the trustee. After the title both legal and equitable had been conveyed by the

trustee, the sale under the judgment was useless and without effect, but that is the worst that can be said of it. The owner of the judgment lien can not be held to have forfeited it or to have lost any remedy for its enforcement by mistaking his remedy and pursuing one which was of no advantage to himself nor injurious to any other person. The title of the purchaser from the trustee was not affected by the sale under the judgment to which he was a stranger.

It is true, as contended for by the appellee, that Wynne could not sell the title to the land and have the surplus, too; but the proposition can not be applied when he did not in fact sell the title, because it had already been sold by another having a full and prior right to do so. If the trustee had not previously sold, the sale by Wynne under the judgment would then have bound him as contended for. If the Rothschild attachment was levied before the trustee's sale, and the trustee had sold the land before the attempted sale under the judgment, Wynne was entitled to intervene in this suit and have judgment for so much of the surplus money in the hands of the trustee as was sufficient to satisfy his judgment.

It seems to have been conceded in the District Court, and to be admitted here, that the sale was made by the trustee after the levy of the Rothschild attachment, but we have not been able upon a careful inspection of the record to find any allegation of the date of the trustee's sale.

The question is a material one. If the land was sold by the trustee before the levy of the Rothschild attachment, no lien was acquired upon the surplus money in the hands of the trustee by the levy of the attachment. Unless the pleadings show that at the date of the levy of the attachment the lands had not been sold by the trustee, the ruling of the court on the demurrer was correct and the judgment should be affirmed.

An exhibit attached to and made a part of a trial amendment filed by the intervenor states the date of the trustee's sale and shows that it was made on the 26th day of November, 1888, but exhibits "will not relieve the pleader from making the proper allegations of which said exhibits may be the evidence, in whole or in part." They may be referred to "in aid and explanation of the allegations in the petition made in reference to said instruments." Rule 19.

Intervenor's petition contains the following averment: "That by the levy of said writ of attachment said Abe Rothschild acquired a lien upon all of the said property so levied on thereunder, including said lands, a part of the proceeds of which the said Sommerville has in his hands as aforesaid, and as to which lien the said Rothschild's lien was paramount to all others except that created by the said deed of trust." And his trial amendment alleges: "That the sale made by the said W. F. Sommerville had the effect of vesting in the purchaser at said sale

full and perfect title to the land embraced in the deed of trust under which said sale was made, and barred the equity of redemption of all persons whomsoever (including this intervenor) claiming to own said land, or asserting the existence of liens thereon, and remitting them to proceed against the surplus funds remaining in said Sommerville's hands after satisfying the debt secured by his deed of trust."

It is difficult to hold that these allegations show that the levy of the Rothschild attachment was made prior to the trustee's sale, without infringing upon some well recognized rules of pleading, and yet they unquestionably suggest the conclusion that the levy occurred first. Otherwise, Rothschild acquired no lien upon the land, and Wynne had no "equity of redemption," and was not "remitted to proceed against the surplus funds." The rule (17) requires that "in passing upon such general exceptions every reasonable intendment arising upon the pleading excepted to shall be indulged in favor of its sufficiency."

In view of the facts that the demurrer expressly pointed out a different objection; that the intervenor's attention had not been called to this condition of his pleadings when he declined to further amend them; that an exhibit attached to his pleadings does state a date which would remove the objection; that the pleadings do argumentatively suggest the allegation, and other conditions referred to, we are of the opinion that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 27, 1891.