LUSE et al. v. REA et al.   (No. 1389.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 4, 1918. Rehearing Denied Jan. 8, 1919.)

1. WORDS AND PHRASES—"INSOLVENT."

One may have sufficient property out of which to pay any percentage of his debt less than 100 per cent., and yet be insolvent, and the conclusion that one is insolvent does not justify the conclusion that his note is wholly worthless.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvent.]

2. MORTGAGES ⬤⇒28 — "EQUITABLE LIEN" — "EQUITABLE MORTGAGES."

Where purchase-money notes recited that they were secured by deed of trust lien on land, one who took notes believing they were in fact so secured is entitled to equitable lien on the land, notwithstanding no deed of trust was in fact executed (citing Words and Phrases, First and Second Series, Equitable Liens and Equitable Mortgages).

3. LIENS ⬤⇒7—EQUITABLE LIENS—EXECUTORY AGREEMENT TO GIVE LIEN.

An executory agreement in writing to give a lien on land is sufficient to create a lien in equity on such land, though mortgage or lien is itself never executed, under the maxim that equity regards that as done which ought to be done.

4. VENDOR AND PURCHASER ⬤⇒254(1)—EQUITABLE VENDOR'S LIEN.

Purchase-money notes are secured by an equitable vendor's lien, though there is no express reservation of a lien either in notes themselves or in deed.

5. FRAUD ⬤⇒59(3)—DAMAGES.

In vendor's action for damages against purchaser for misrepresentation as to solvency of maker of notes received in part payment, and as to value of land upon which notes were to be a vendor's lien, vendor's measure of damages, if action is to be taken as one of deceit, is difference between land conveyed and consideration received.

6. FRAUD ⬤⇒59(3)—NOTES AS PART PAYMENT —SOLVENCY OF MAKER—EVIDENCE.

In vendor's cross-action for misrepresentation of purchaser as to solvency of maker of

notes accepted by vendor in part payment, evidence of maker's insolvency should be with reference to time of alleged false representations or as to time when value of notes is to be determined.

Appeal from District Court, Deaf Smith County; Reese Tatum, Judge.

Action by Mrs. P. L. Luse and husband against Mrs. Mary L. Waller Rea and husband, in which defendants bring cross-action in which A. F. Luse is joined. From judgment for defendants on cross-action, plaintiffs appeal. Reversed and remanded.

W. H. Russell, of Hereford, for appellants.

Kimbrough, Underwood & Jackson, of Amarillo, and Carl Gilliland, of Hereford, for appellees.

BOYCE, J. This suit was instituted by Mrs. P. L. Luse, joined by her husband, R. G. Luse, against Mrs. Mary L. Waller Rea, and her husband, B. M. Rea, for recovery on breach of warranty of covenants against incumbrances contained in a conveyance of certain two sections of land conveyed by Mrs. Rea and her husband to Mrs. Luse. The questions on this appeal arise on the trial of the cross-action filed in said suit by the said Reas against the said P. L. and R. G. Luse, and also A. F. Luse, who was made party to the suit, so that it will not be necessary to notice further the issues raised by the pleading and the evidence as to the action on the breach of warranty. In this cross-action Mrs. Rea alleged that she, being the owner of two sections of land in Deaf Smith county, Tex., on which there was an incumbrance, entered into a contract with A. F. Luse to trade her equity in this land to A. F. Luse, in consideration of $800 cash, 160 acres of land in El Paso county, and $14,000 in notes, executed by O. H. Bennett, and secured by a deed of trust on five and one-half sections of land in Culberson and El Paso counties; that the contract was consummated in accordance with the preliminary agreement just stated; that Mrs. Rea was induced to enter into this contract by representations made to her by the said A. F. Luse, who was acting for Mrs. P. L. Luse and her husband, to the effect that the five and one-half sections of land upon which he was to procure a deed of trust from the said Bennett to secure the payment of said notes for $14,000 were worth about $28,000, for which amount he had sold the same to the said Bennett, the $14,000 in notes representing the balance of the purchase price he was receiving for said land; that said notes were a vendor's lien on said land, and he also agreed to have them secured by deed of trust executed by Bennett. It is further alleged that as a matter of fact such land at the time was practically worthless; that O. F. Bennett was insolvent, and the deed of trust, which purported to have been executed by O. H. Bennett to secure the payment of said notes executed by him and delivered to Mrs. Rea with such notes, was a forgery; that by such means the said Mrs. Rea was cheated out of her equity in the Deaf Smith county land, which was alleged to be of the value of $25,000, for which amount she prayed judgment.

The evidence shows that the trade was closed in pursuance to the preliminary contract referred to in the cross-action. Such contract provided that the Deaf Smith county land was to be conveyed by Mrs. Luse for the consideration referred to, including "$14,000 worth of deed of trust notes, executed by O. H. Bennett, and secured by lien on five and one-half sections of land located in Culberson county, Texas, and El Paso county, Texas," etc. The notes so delivered by Luse in consummation of the contract were executed by Bennett and payable to Mrs Rea, and each note contained this recital: "This note is secured by a deed of trust lien on Secs. * * *;" following this statement with a specific description of the land in Culberson and El Paso counties. A deed of trust on said land, purporting to have been executed and acknowledged by the said Bennett and securing the payment of these notes, was also delivered by Luse to Mrs. Rea with the notes. The jury found, in response to special issues submitted to them, that A. F. Luse represented to Mrs. Rea that Bennett was financially responsible for the payment of said notes; that as a matter of fact Bennett was insolvent; that Mrs. Rea relied on these representations, and was thus induced to make the contract, and that the deed of trust purporting to have been executed by Bennett was a forgery. No evidence was offered as to the value of the 160 acres of land in El Paso county, conveyed to Mrs. Rea, nor as to the value of the five and one-half sections of land described in the Bennett notes and deed of trust. It was shown that Mrs. Rea had traded the said notes for $14,000 for property of various kinds, and upon such sale of said notes had indorsed them to the purchaser thereof. Upon this evidence and the findings of the jury, as above stated, the court entered judgment on the cross-action in favor of Mrs. Rea for the "face value of the notes delivered to defendants by A. F. Luse, in part payment for defendant's Deaf Smith county land, the sum of $14,000 being the value of said notes had they been secured by valid deed of trust on the Culberson and El Paso counties land, as represented by A. F. Luse, or had O. H. Bennett been solvent."

A considerable portion of the briefs of the parties is taken up in a discussion of the proper measure of damages to be applied to the cause of action set up by Mrs. Rea in her cross-action. The appellants' contention

is that the cause of action is for deceit, and that the measure of damages is the difference in the value of the property conveyed by Mrs. Rea, to wit, her equity in the Deaf Smith county land, and the value of what she received therefor. The appellants contend that the measure of their recovery is the face value of the notes, since they assert that it has been shown to be worthless. For guidance of the court upon another trial, we will later express our opinion on the questions thus presented, but will first say that we do not think the judgment can be sustained under any theory.

[1-4] There was no question as to the execution by Bennett of the notes for $14,000. He admitted their execution to Mrs. Rea, and promised to pay them, though he denied the execution of the deed of trust. Now, these notes had been sold by Mrs. Rea under indorsement, which of course bound her to their payment, so that they were not and could not be surrendered and delivered to Luse. If they are worth anything at all, or if anything is ever collected on them, Mrs. Rea, and not Mrs. Luse, would, under the judgment, get the benefit thereof. Before Mrs. Rea could recover the face value of the notes under such circumstances, under any theory of damages applicable to this case, she ought to show that the notes were worthless. No evidence as to the value of the notes was offered except that which might be deduced from the fact that Bennett was insolvent, and that payment of the notes was not secured by deed of trust, as represented. Now, the note of an insolvent may not be worthless. The court charged the jury that "a person is insolvent if he has not property or means sufficient to pay his debts." He might have sufficient property out of which payment of any per cent. of his debt less than 100 per cent. might be made and yet be insolvent.' So that a mere general conclusion that a person is insolvent does not, we think, justify a conclusion that a note signed by such person is wholly worthless. The record, we think, also very pointedly suggests that an equitable lien against the five and one-half sections of land in El Paso and Culberson counties, Tex., may be enforced to secure payment of these notes. The recitation in the notes themselves that they are secured by a deed of trust lien on said land, and the delivery of the notes by Bennett to Luse, for the purpose of delivery to Mrs. Rea, who was without knowledge that the deed of trust was not in fact executed, would, we believe, authorize a court of equity to decree an equitable lien against said land, notwithstanding no deed of trust was in fact executed. Boehl v. Wadgymar, 54 Tex. 589; Atlanta National Bank v. Four States Grocery Co., 135 S. W. 1137; Words and Phrases (1st and 2d Ed.) titles "Equitable Liens" and "Equitable Mortgages"; Pomeroy's Equity

Jurisprudence (3d Ed.) §§ 1235–1237. The doctrine of equitable liens grows out of an application of the maxim of equity "which regards as done that which ought to be done." An executory agreement in writing to give a lien on land is thus sufficient to create a lien in equity on such land though the mortgage or lien is itself never executed. Pomeroy's Equity Jurisprudence, § 1237, and authorities above cited. It is said by one authority that "an equitable lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation or declared by a court of equity from the facts and circumstances of the case." Garrison v. Vermont Mills, 154 N. C. 1, 69 S. E. 743, 31 L. R. A. (N. S.) 452. Another authority asserts that "an equitable mortgage results from different forms of transactions, in which there is present an intent of the parties to make a mortgage, to which intent, for some reason, legal expression is not given in the form of an effective mortgage." Western Natl. Bank v. Natl. Union Bank, 91 Md. 620, 46 Atl. 962. The statement in the notes that "this note is secured by a deed of trust lien" on certain land is more than a mere collateral statement. It is in the nature of an agreement also that the maker of the note has, prior to or contemporaneously with the execution and delivery thereof, executed a deed of trust on the land described to secure its payment. For instance, it was held in the case of Buckley v. Runge, 136 S. W. 535, that this recital in the notes, given as part of the purchase money for land, "Secured by the S. E. and S. W. quarter of N. E. Bl. of out-lot 70," "evidences an express contract that they shall be so secured," and therefore created an express contract lien, which prevented the title to said land from passing to the vendee. But we do not think it is necessary to hold in this instance that this statement constitutes an express agreement that the notes are secured by a deed of trust; for when third parties deal with the note on the faith that the maker of the note has in fact done what he has said he has done to secure payment of the notes we can see no reason why the application of the maxim of equity, which we have already referred to, would not justify a court of equity in decreeing that such facts are sufficient to establish an equitable lien against the property. The maker of the note ought not be heard to say that he has not done that which he ought to have done to secure payment of these notes. We also think that the record suggests that the payment of these notes is secured by an equitable vendor's lien on the five and one-half sections of land. Mrs. Rea had alleged in her cross-action that Luse represented to her that the $14,000 notes constituted a vendor's lien on this land conveyed by him to Bennett. It is true that no direct evidence

was offered to show whether these notes represented the purchase price of the said land, or even that said land was conveyed by Luse to Bennett; but we find this statement in the statement of facts: "It is agreed in open court that no vendor's lien was retained in the deed from A. F. Luse to O. H. Bennett on the land mentioned and described in the trust deed herein copied and the notes executed by Bennett to Mrs. Rea." The inference from this is that the notes were in fact a part of the purchase price for said land conveyed by Luse to Bennett. If so, an equitable vendor's lien would result, notwithstanding there is no express reservation of a lien, either in the notes themselves or the deed. Joiner v. Perkins, 59 Tex. 300; Briscoe v. Bronaugh, 1 Tex. 326, 46 Am. Dec. 108; Senter v. Lambeth, 59 Tex. 259. We conclude therefore, that the evidence is such that it is not, in our opinion, sufficient to justify a conclusion that the said notes were wholly worthless, and that is the only conclusion upon which the judgment rendered can be upheld under any theory of the case. We therefore sustain appellants' sixth and seventh assignments.

[5] As to the proper measure of damages in this case, we will say that the pleading and the evidence present two groups of facts which, if taken separately, would respectively make the suit an action for deceit on one group, and one for breach of the contract on the other. Allegations of such facts as that the making of the contract was induced by false representations as to the financial responsibility of Bennett, and the value of the land which was to be included in the deed of trust to be given to secure the payment of the $14,000 notes would make the suit purely an action for deceit. In such case the measure of damages would be that announced in George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456, and the line of authorities following it, including the case of Doolen v. Hulsey, 192 S. W. 368, decided by this court. As we have already noted, the contract provided that Mrs. Rea should receive in the trade $14,000 worth of deed of trust notes executed by O. H. Bennett, etc. Now, if Luse delivered to Mrs. Rea notes which were not in fact so secured and they were accepted by her in ignorance of such fact, there was a breach by Luse of this provision of the contract, and, having disposed of the notes so that they could not be rejected, she might recover for such breach, and the measure of her recovery would be the difference in the value of the notes actually received and their value had they been secured as contracted for. This distinction is clearly made by the Supreme Court in the case of George v. Hesse, supra. In that case the contract was for an exchange of certain

lands. George represented to Hesse that the land which he proposed to convey to him in the trade had "a gusher of water" upon it. This representation was false, and it was held that the measure of Hesse's recovery was the difference in the value of the land he had conveyed to George and the value of the land he had received in exchange, and not the difference in the value of the land conveyed to Hesse without the gusher and its value if the representation had been true. In the discussion by the court in that case importance is given to the fact that "the contract in this case was not to convey a tract of land 'with a gusher on it,' but was to convey a certain tract of land which was falsely represented to have a gusher on it, which false representation was an inducement which led to the contract." The contract here did actually provide for notes secured by deed of trust lien on certain land, and, if the failure of the notes to be so secured be the only ground of recovery, we think a suit for breach of contract, and the application of its consequent measure of damages, would be proper. The plaintiffs' petition in this case, however, so combined the facts as that it is, we think, to be regarded as an action for deceit.

[6] The evidence of insolvency ought to be with reference to the time of the alleged false representations or as to the time when the value of the notes is to be determined. Moore v. Beakley, 183 S. W. 380; Morrison v. Clarke, 55 Tex. 437.

The other questions raised are not likely to arise upon another trial and need not be discussed.

For the reasons stated the case will be reversed and remanded.