ZIMMERMAN v. KEITH et al. (No. 1670.)

(Court of Civil Appeals of Texas. Amarillo. May 12, 1920. On Motion for Rehearing, June 23, 1920.)

1. **Vendor and purchaser** ⬥⟲280(2)—**Pleading in cross-action, setting up breach of contract with parties other than plaintiffs, held demurrable.**

In action to foreclose vendor's lien, where defendant in cross-action pleaded damages for breach of contract alleged to have been made with plaintiffs, and in support of such allegation set out contract purporting on its face to have been made with parties other than the plaintiffs, without showng by further allegation how plaintiff's liability accrued, court did not err in sustaining general demurrer to answer.

2. **Vendor and purchaser** ⬥⟲351(2)—**Damages for vendors' breach of contract to make improvements is difference in value of land.**

The measure of purchaser's damages for vendors' breach of contract to make permanent and extensive improvements of the land was the difference between the value of the property as it would have been if contract had been performed and its value in consequence of the breach.

3. **Vendor and purchaser** ⬥⟲349—**Allegation of general damages sufficient to cover vendors' breach of contract to make improvements.**

Allegation of general damages is sufficient to entitle purchaser to recover the difference between value of land as it would have been if vendors had performed contract to make extensive and permanent improvements and its value in consequence of vendors' failure to perform.

4. **Vendor and purchaser** ⬥⟲351(7)—**Purchaser's expenses not recoverable on vendors' breach of contract to furnish irrigation well.**

In action to foreclose vendors' lien, in which purchaser brought cross-action for damages for vendors' breach of contract to furnish irrigation well of certain capacity, the cost of erecting buildings on land held too remote to be recoverable in such action.

5. **Vendor and purchaser** ⬥⟲351(2)—**Crop failure not special damages from vendor's breach of contract to install irrigation well.**

In purchaser's cross-action for vendors' breach of contract to furnish irrigation well of certain capacity, damages sustained by purchaser because of crop failures during the time it occupied the land were not recoverable as special damages, but could be considered as a matter of evidence in estimating the difference between the value of the land as it would have been if vendors had performed contract and its value in consequence of such breach, recoverable as general damages.

On Motion for Rehearing.

6. **Appeal and error** ⬥⟲854(3)—**Judgment affirmed where court sustained general demurrer without indicating ground.**

Where court sustained general and several exceptions to answer without indicating on what ground the general demurrer was sustained, judgment will be affirmed, where there was a ground on which to base ruling.

Appeal from District Court, Floyd County; R. C. Joiner, Judge.

Action by Minor C. Keith and others, as trustees, against Milton T. Zimmerman. Judgment for plaintiffs, and defendant appeals. Affirmed.

Geo. L. Mayfield, of Plainview, and T. F. Houghton, of Floydada, for appellant.

P. B. Randolph, of Plainview, for appellees.

---

⬥⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

HALL, J. Minor C. Keith, Harry I. Miller; Ward E. Pearson, Francis R. Heart, and Bradley W. Palmer sued appellant to recover the amount of eight vendor's lien notes, executed by him to plaintiffs as trustees, and to foreclose the vendor's lien upon certain land described in the petition. Defendant Zimmerman's second amended original answer consisted of general denial, plea of non est factum as to the supplemental contract attached to and made a part of the plaintiffs' supplemental petition, and by way of cross-action alleged, in substance, that in the spring of 1914, plaintiffs, acting through their agent A. R. Kroh, entered into a contract with him, whereby they sold him the land described in the petition for the consideration of $16,800, a part of which is represented by the notes sued upon; that by the terms of the contract plaintiffs were to sink a well and furnish a pumping outfit that would raise 2,000 gallons of water per minute, representing at the time of the contract that the well and pumping outfit were then out of repair, but promising to put them in condition and keep the same in repair at their own expense for two years, after defendant moved on the land; also agreeing at the time of sale that said well and pumping outfit which they were to furnish would irrigate the entire 160 acres of land; that they further agreed to prepare ditches at their own expense for irrigating the land. It is further alleged that the contract in part was reduced to writing; that after its execution defendant discovered that the above terms, binding them to furnish a well which would flow 2,000 gallons of water per minute, and their obligation to keep the well and pump in repair for two years, and to prepare the necessary ditches at their own expense, was omitted from the writing, whereupon their said agent, Kroh, drew up a supplemental contract embodying said stipulations; that, relying on said representations and contract, plaintiff agreed to pay the consideration named, and thereafter, on or about April 4, 1917, moved on the land, and requested plaintiffs to prepare the same for irrigation; that plaintiffs made some attempt to comply with the contract, but during the year of 1918 abandoned and breached the contract, and failed and refused to do anything further in performance of its terms; that the pumping outfit provided only about 650 to 700 gallons per minute, and, after operating awhile, would furnish only about 400 gallons per minute; that the ditches were not prepared, and the land was not irrigated, as agreed; that at the date of the sale and at this time the land is worth the sum of $32,000 if properly prepared and irrigated according to the obligation; that by reason of the breach on the part of plaintiffs the land is now worth only the sum of $10,400; that if the contract had been per-

224 S.W.—19

formed by plaintiffs the crops raised on the premises would have been worth $8,000; that the crops so raised without irrigation for the two years were of the value of $2,000; that relying upon plaintiff's promise to perform their contract, appellant erected a barn at the cost of $1,300, outhouses at the expense of $175, and fences at a cost of $100, all of which improvements were needed on the land for its proper enjoyment; that because of the said breach of said contract the products have been reduced, and defendant is not able to maintain the premises; that the prices above stated for said improvements are reasonable. Appellant tenders the improvements to plaintiff, and asks judgment for the cost of same in the sum of $1,575. The prayer is for the value of the improvements and the difference in the value of the land as it is and what it would have been if the contract had been complied with, aggregating $29,175.

By a supplemental petition plaintiff demurred generally to the answer, and urged several special exceptions, which will be set out in the discussion of the assignments. The supplemental petition further sets up the statute of limitation of two years, and alleges specially that defendant went into possession of the premises, using, occupying, and enjoying the same, appropriating the rents, revenues, and profits therefrom to his own use and benefit; that he still retains possession of the premises after discovering the alleged wrongs and misrepresentations, and is estopped from claiming damages. The authority of Kroh to execute the supplemental contract is specially denied. A copy of the supplemental contract is attached to this pleading, which recites in part as follows:

"Whereas, heretofore, to wit, on the 24th day of July, A. D. 1914, J. H. Slaton, H. C. Randolph, and Leroy W. Baldwin, trustees, made and entered into a contract in writing with Milton Zimmerman of Mendon, Chariton county, Missouri, whereby they contracted and agreed to sell to the said Zimmerman the N. W. ¼ of survey No. 22, in block N, Floyd county, Texas, for a total consideration of $16,800, etc.; and whereas, the said Milton Zimmerman has made a total cash payment to this date of $2,000.00 by liquidating the $900.00 note and the $1,000.00 note; and whereas, the said Slaton, Randolph and Baldwin, trustees, have conveyed and assigned all their interest and all their lands in Hale, Floyd and Swisher counties, Texas, to Minor C. Keith, Harry I. Miller, Ward E. Pearson, Francis R. Heart and Bradley W. Palmer, trustees, who are the present legal owners and holders thereof; and, whereas, all parties to said contract and the present trustees are desirous of entering into a revised contract with Mr. Zimmerman, abrogating the former contract made: Therefore, this agreement, made and entered into on this the 23d day of October, A. D. 1916, by and between Minor C. Keith, Harry I. Miller, Ward E. Pearson, Francis R. Heart, and

Bradley W. Palmer, acting herein by Texas Land & Development Company (through its general manager, C. F. Myers), their duly authorized agent, hereinafter known as party of the first part, and Milton Zimmerman of the county of Chariton, state of Missouri, hereinafter known as party of the second part, witnesseth."

The contract proceeds to recite practically the same terms as the original contract, but with more particularity and further stipulates as follows:

"It is fully understood and confessed herein by the party of the second part the alfalfa to be planted on said farm has been so planted. The irrigation well and engine have been fully installed and equipped and the necessary acreage broken; that the trustees have performed their part of all agreements heretofore made except that they have not yet placed the remainder of the standard improvements thereon, which they are to do at their option between this date and March 1, 1917, and further that abstract showing good and merchantable title in the trustees has been heretofore furnished the second party as agreed in the former contract. It is further agreed that the parties of the first part shall on or before March, 1917, or within a reasonable time thereafter, execute a good and sufficient deed to the above-described property to second party or his assigns, which deed shall be placed in escrow in the Third National Bank of Plainview, Texas, there to be held with this contract and with the personal notes given hereunder until the time of closing this deal. * * *

"It is fully understood and agreed herein that the closing up of this contract, the drawing of the deed and delivery of said notes shall be on or before March 1, 1917, but the parties of the first part shall have a reasonable time after March 1, 1917, in which to execute their said deed and deposit same in the bank and close this trade after payment of the personal note above described by second party and this trade shall not be closed and is not to be consummated by deed until personal note above described is paid in full and in the event the said second party shall fail or refuse to comply with this agreement in whole or in part within the time specified in this contract, and at such time as deed is tendered to him, then the initial consideration heretofore mentioned shall be declared forfeited and shall be paid over and delivered to said first parties by any bank or banks now holding the same or which may hereafter secure the same and said banks are hereby authorized to pay over or deliver same to the first parties in any such event, which if received by them shall be received as full liquidated damages."

The court sustained the general and several special exceptions to the answer. The defendant declining to amend, there was a judgment for plaintiff for the amount of the notes and foreclosure of the lien. It appears from the record that the defendant's cross-action is based upon the breach of an original and supplemental contracts. The original contract is made an exhibit to the pleadings, and referred to in the answer as follows:

"That part of the terms of this contract was reduced to writing is shown by Exhibit A, attached hereto and made a part of this answer; that after signing said contract and while on the way home, defendant, after reading over said contract, noticed that the above terms as to furnishing a flow of 2,000 gallons of water per minute and keeping pumping well in repair for a period of two years after the date of removal of defendant to said land. the preparing ditches over said land at the expense of plaintiffs, was by accident or mistake left out of said contract, whereupon plaintiffs, through their agent, A. R. Kroh, drew up a supplemental contract, setting out each and all of said obligations on the part of plaintiffs, and the same was executed by plaintiff and defendant, whereby," etc.

It is further alleged that the supplemental contract was never delivered to the defendant, and notice is given to produce it. As stated above, what purports to be the supplemental contract was attached to plaintiff's amended original petition, but its execution is denied by defendant's plea of non est factum. The original contract, marked "Exhibit A," and referred to as above, was made, as recited therein, "by and between J. H. Slaton and H. C. Randolph of Hale county, Texas, and Leroy W. Baldwin of New York City, N. Y., trustees, by Texas Land & Development Company, acting by Walter S. Ayres, its vice president and general sales manager, or his duly appointed agent, parties of the first part, and Milton T. Zimmerman, of Chariton, Missouri, county of Chariton, state of Missouri, party of the second part." The effect of the above allegations is that the supplemental contract was also made with Slaton, Randolph, and Baldwin, and not with the plaintiffs, and there is no allegation in the petition which attempts to explain this discrepancy and contradiction. In Freiberg et al. v. Magale, 70 Tex. 116, 7 S. W. 684, it is held that when an instrument, made an exhibit to a pleading, contradicts or is inconsistent with the allegations in the pleading, the exhibit, and not the pleading, will control. In the case of Burks v. Watson, 48 Tex. 107, Chief Justice Roberts, in discussing the office and effect of exhibits to pleadings, uses this language:

"In passing upon the sufficiency of the petition, under general exceptions, it must be held by the court that everything is alleged properly which is embraced in the allegations made, upon a reasonable construction of their import, as aided or explained by that which appears in the exhibits pertinent to the issues made in the case. * * * In this mode of pleading, the exhibits may perform a very important office; for the use and purpose of an exhibit is to set forth in detail that which is alleged in more general terms, or to embody in the record such facts as will, in legal effect, amount to the fact as alleged in the petition, or to aid the allegations of a petition in fixing more accurately

and more definitely their import, but not to supply entirely the omission of allegations necessary to present a good cause of action. An exhibit to the petition, therefore, may be said to be made in aid of or in elucidation of allegations; but it does not, by itself, constitute allegations upon which issues may be formed irrespective of the allegations made in relation to it. If the exhibit is contradictory, or not correspondent in legal effect to, the allegations concerning it, then the allegations stand unsupported and unaided by it, and the issues must be formed and tried on the allegations as made in the petition."

[1] The notes sued upon were made to plaintiffs. According to the allegations in the answer the original and supplemental contracts, as shown by the exhibit, were made with other and different parties. This being the case, appellant could not maintain a cross-action for damages against plaintiffs for damages for the breach of a contract made with other parties, without showing by further allegation how plaintiff's liability accrued. This the answer fails to show. We conclude that upon this ground the court did not err in sustaining the general demurrer. Cockrell v. Houston Packing Co., 133 S. W. 697; Mecca Fire Insurance Co. v. Campbell, 145 S. W. 630; Shuttuck v. Griffin, 44 Tex. 567. This question presents fundamental error, and is also suggested by appellee's second counter proposition; but, because it is not clear that this defect in the answer was taken into consideration by the court and the demurrer sustained on that ground, we think the cause should, under the rule followed in Wynne v. State National Bank, 82 Tex. 378, 17 S. W. 918–920, be reversed and remanded.

[2] It seems from a reading of the judgment that the court sustained the general demurrer principally upon the theory that the answer stated an improper measure of damages. The general damages sought to be recovered by appellant was the difference between what would have been the value of the land if the contract had been performed and its value in consequence of the breach. Appellee insists that the rule announced in the case of George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456, and other cases following the George Case and referred to by this court in Luse et al. v. Rea. 207 S. W. 942, is the correct measure of damages. We think appellee is in error in this contention, for the reason that Zimmerman is not seeking a recovery based upon deceit and misrepresentation. The action as presented by appellant's answer is simply one for damages for breach of a contract, where fraud and deceit are not alleged and the allegations bring it within the rule announced in Abney v. Roberts et al., 166 S. W. 408, in which writ of error was refused by the Supreme Court. As stated in that case, this

is one where the contract called for a permanent and extensive improvement of the land, and for a breach thereof the purchaser was entitled to recover the difference between the value of the property as it would be if the contract had been performed and its value upon the vendor's failure to perform. The agreement to provide a well and pump which would furnish 2,000 gallons of water per minute, to keep the engine in repair, and provide the necessary irrigation ditches, was a part of the consideration for the notes executed by appellant, and provides the key for estimating the damages. Hampton v. Co-operative Town Co. (Tenn. Ch. App.) 48 S. W. 679; Lee v. Harris, 85 Conn. 212, 82 Atl. 186; South Memphis Land Co. v. McLean Hardwood Lumber Co., 179 Fed. 417, 102 C. C. A. 563.

[3] The court sustained plaintiffs' third special exception upon the ground that the answer did not set forth the proper measure of damages, "and does not distinctly state the nature of the counterclaim and the several and distinct items thereof as required by law." The allegation of general damages is sufficiently specific.

[4, 5] The court also sustained special exception No. 7. This exception comprises four distinct grounds of exception. The first is that the answer does not show in what measure or in what way plaintiffs became liable for said sum sued for. This ground of objection has been discussed above, and merely presents in the form of a special exception an objection raised by the general demurrer. The second subdivision of the seventh exception is that the answer does not show various items of cost making up said items of improvement. We cannot consider this ground because we are unable to determine whether the appellees refer to the improvements contracted to have been made by them or the improvements which appellant alleges he placed upon the land. The third subdivision objects because the claim for improvements, as made by appellant, is inconsistent with the other claims in the answer, wherein he attempts to retain the premises upon which the improvements are situated, and compelled the plaintiffs to take the improvements. In the sixth paragraph of the answer the appellant alleges that he erected a barn and garage and smokehouse and certain fences on the premises at a total cost of $1,575, and seeks to recover the cost of such improvements, tendering the improvements to plaintiffs. The court did not err in sustaining the exception to these items. Such damages are too remote to be recovered in an action of this character. Since the cause must be remanded for another trial, we suggest that the item of damages claimed in the fifth paragraph of the answer, resulting from a failure of crops during the two years in which appellant occupied the premises, such

failure resulting from the breach of the contract, should be taken into consideration as a matter of evidence in estimating the general damages recoverable under the rule announced in the Abney Case, but to permit the recovery thereof as special damages would result in a doubtle recovery. The court did not err in sustaining the exception to this item.

For the reasons stated, the judgment is reversed, and the cause remanded.

## On Motion for Rehearing.

[6] Appellees, in their motion for rehearing, insist that we erred in not affirming the judgment and in reversing and remanding it upon the authority of Wynne v. State National Bank, 82 Tex. 378, 17 S. W. 918. We have carefully reviewed the record and the authorities, and have concluded that this contention is sound, and should be sustained. The judgment of the trial court sustaining the exceptions is general in its language, and there is no indication upon what ground the general demurrer was really sustained, as was done in the Wynne Case, supra. This being the state of the record, and believing that the general demurrer was correctly sustained by the trial judge, and in the original opinion, this court having approved the action of the trial judge, it becomes our duty to affirm the judgment. We are sustained in such holding by the following cases: Jennings v. Moss, 4 Tex. 452; Sneed v. Moodie, 24 Tex. 159; Colbertson v. Beeson, 30 Tex. 76; Seligson & Co. v. Hobby & Post, 51 Tex. 147; Bomar v. Parker, 68 Tex. 435, 4 S. W. 599; International Order of T. K. & D. of T. v. Denman, 160 S. W. 980.

The motion for rehearing is granted and the judgment affirmed.