**STALEY, LANGFORD & CHENAULT v. CITY NAT. BANK OF COMMERCE.**
(No. 2146.)

(Court of Civil Appeals of Texas. Amarillo. May 23, 1923. Rehearing Denied June 30, 1923.)

**1. Garnishment ⌖218—Wife claiming fund as trust property for third person entitled to introduce letters and telegrams rebutting presumption that fund was community property.**

Where funds on deposit in a bank were garnished as the property of intervener's husband in an action in which both the husband and wife were defendants, the wife, intervening and claiming the fund as her property held in trust for a third person to invest for him, was properly permitted to introduce in evidence letters and telegrams between her, on the one hand, and the bank, her husband, and the person for whom she claimed to hold such fund in trust, to rebut the legal presumption without such explanatory testimony that the fund was community property belonging to her and her husband.

**2. Garnishment ⌖223—Judgment for claimant who claimed property as trust fund not authorized to require consent of cestui que trust to disbursements.**

A judgment for intervener, the wife and pro forma codefendant, in an action against her husband, that she was entitled to the fund which she claimed to hold in trust for a third person, held sustained by the pleadings, except as to that part which required the fund to be in the registry of the court to be disbursed by the clerk only on the orders of the beneficiaries of the trust, such part of the judgment being unauthorized.

**3. Garnishment ⌖216—Claimant not required to verify pleading.**

The provisions of Vernon's Sayles' Ann. Civ. St. 1914, arts. 299, 300, 301, providing that the plaintiff and defendant in garnishment, if not satisfied with the garnishee's answer, may controvert the same by affidavit in writing, have no reference to the rights of third parties claiming the property garnished, and any such claimant intervening is not required to verify his pleading.

**4. Garnishment ⌖110—Claimant entitled to recover where defendant's apparent right to fund obtained by fraud.**

The plaintiff in garnishment can have no greater right to the fund than the defendant has, and, where defendant's apparent right was obtained through fraud perpetrated on his wife, the claimant and intervener, she is entitled to recover.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by Staley, Langford & Chenault against Stonewall Brown and the City National Bank of Commerce, garnishee, in which Mrs. Stonewall Brown intervened claiming ownership of the fund garnished. From a judgment for intervener, the plaintiffs appeal. Reformed and affirmed.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellants.

Martin & Oneal, of Wichita Falls, for appellee.

HALL, C. J. The appellants recovered a judgment April 26, 1920, in the district court of Wichita county, against Stonewall Brown, for $6,019.43. No execution had been issued upon it, and on August 20, 1921, they filed a suit in the district court of Wichita county, to revive the judgment and on the same day instituted garnishment proceedings against the appellee bank, alleging that said bank was indebted to Stonewall Brown and had effects belonging to the said Brown in its possession. On the 20th day of September, 1921, the bank, through its vice president, C. E. Basham answered, alleging that at the

time of the service of the writ there was deposited to the credit of Stonewall Brown, with the garnishee, the sum of $2,835.

On October 3, 1921, Mrs. Stonewall Brown, joined pro forma by her husband, filed her amended plea of intervention and in reply to the bank's answer and to the pleadings of the appellants, alleging in substance that, at the time of the service of the writ of garnishment upon the bank and at the time its answer was filed, Stonewall Brown did not have any money on deposit to his credit in the bank; that the sum of money mentioned in the garnishee's answer was not the property of Brown and had never been deposited to his credit, but that it was her separate property, held by her to be invested by her alone for one W. E. Kent; that she was the sole owner of said sum, holding the same to be used and invested for said Kent; that it was her separate fund and estate for the purpose stated; that her husband had no right, title, or interest in it and had never had any right thereto; that the fund had been given to her by the said Kent as her sole and separate estate to be invested for Kent and had been at all times and was a trust fund in her hands for such purpose; that on or about the —————— day of August, 1921, she authorized the bank to transfer the money to her husband, but at that time she was not apprised of the true facts concerning the fund, and did not know that it had been given her by Kent for investment for him; that she had been informed by her husband that the money belonged to him and that he, by false and fraudulent representations, had induced her to transfer to him the amount of the deposit by falsely representing that the money belonged to him; that he was in great need of the same, and that he had certain options in California depending upon said fund and would lose heavily if he did not immediately receive the same; that she did not know at the time that the money had been given to her by Kent, but believed that it belonged to her husband and had been by mistake deposited in her name instead of his, and acting upon such false representations and belief had requested the bank to transfer $3,000 of the $5,000, deposited to her husband; that on or about the 8th day of September, 1921, she learned for the first time that Kent had sent her the $5,000 for investment for him; that $2,835 mentioned in the garnishee's answer was a part of the said deposit; that on said date she learned for the first time that the representations made to her by her husband were not true; that immediately upon learning the true facts she notified the bank of the fraud of her husband and demanded that the money be held for her; that if said fund had been received and deposited by said bank to the credit of her husband it was done with full knowledge on the part of the bank that it was her property and was done

after the bank had been notified by her that the fund was hers.

In reply to this pleading the appellants alleged that the money was on deposit with said bank to the credit of Brown and was his property, and that the intervener and her husband were fraudulently attempting to evade the effect of the writ and the lien. E. L. Fulton as attorney ad litem, filed a plea of intervention on March 8, 1922, but with the consent of the court the answer was withdrawn and stricken from the files. There was a trial to the court without a jury and a judgment that the appellants take nothing against the bank, and that Mrs. Brown, as trustee for Kent, recover of the bank $2,835, and further decreed that the bank pay said sum into the registry of the court to be held by the clerk and paid out only upon the orders of Kent. It was further decreed that Stonewall Brown take nothing. From this judgment appellants alone gave notice of appeal.

By the first three propositions it is insisted that the judgment is based upon hearsay testimony admitted and considered by the court over the appellants' objections. By proper bills of exception certain evidence was admitted, which appellants insist was irrelevant and incompetent as hearsay. A letter from Mrs. Brown to the bank is as follows:

"Yours of August 13th in re moneys from Shanghai received. Will you please forward $3,000.00 to Stonewall Brown by Western Union, Los Angeles, California? Deduct charges, waive identification. Charge the $3,000.00 to my account."

Upon receipt of this communication the bank, by proper entries, transferred $3,000 of the deposit from Mrs. Brown's account to the credit of Stonewall Brown. Following this letter the garnishment writ was served upon the bank. The appellants admit that this testimony was proper. They object, however, to a letter written by Kent to Mrs. Brown from Shanghai, China, on August 6, 1921, acknowledging receipt of her cablegram and informing her that he had sent $5,000 which the letter recites:

"You must put it in the scheme as you think best, because I cannot advise anything. Please write me details, prospects, etc. * * * If I make anything out of this it will be the first time and will be entirely due to you."

They further object to the following cablegram from Shanghai to Mrs. Brown, dated August 8, 1921: "Apply City National Bank $5,000.00, Kent." Also a cablegram from Kent to the bank as follows: "Remitted five thousand." The court admitted the following telegrams from Stonewall Brown to his wife, who was at that time in Monte Vista, Colo.:

"August 12th. Some money sent me City National Bank at home was addressed Mrs.

instead of Mr. I need it quickly as possible. Wire bank at once as follows: 'Forward money which came in my name to Mr. Brown, through Western Union immediately, Los Angeles, Deduct charges. Waive identification.' Business prospects much brighter. Don't fail do just as suggested at once. Love, Stonewall."

"August 13th. Bank has not heard from you. Imperative you comply request in night letter immediately. Wire me confirmation. Love, Stonewall."

"August 14th. Your quixotic refusal will leave me and others to take losses on properties optioned. It leaves me without funds and discouraged and hurt just as success and complete justification of my course are in sight. You have acted without the facts. Only the quickest compliance in the morning will redeem things. If your decision stands then I am through. This is final. The choice is yours. If you wire yes then I pledge success and happy landings. If not then I will know you welcome the message. Good luck and good-bye."

"August 18th. Silverware removed for excellent reasons and is in safe-keeping subject to your instant order. Bank refused to forward money. For God's sake wire them immediately, waiving any claim on account of my removal silverware and asking them to forward funds at once."

The following telegrams from the Western Union Manager at Wichita Falls to Mrs. Brown at Monte Vista, Colo., were also admitted:

"August 17, 1921. Answer your letter of August 12th, we are attaching copies of your cables dated August 7th. We have just registered your address as Monte Vista, Colorado, and in future will forward to you there."

"Wichita Falls, September 8, 1921. Mr. Cowan, Denver Colorado. July 1st, Stonewall sent following cablegram Capt. Kent, Pacific Steamship Nagaski: 'Opportunity make big money, new oil field. Suggest you and friend cable all possible. We guarantee success. Stonewall Brown.' About 8th received following cable Shanghai to Mrs. Stonewall Brown, City National Bank Commerce. 'Remitted five thousand. Kent.' Received the following: 'Los Angeles, Calif. Forward money or telegram. Waive identification. Stonewall Brown.' We forwarded all messages including Mrs. Stonewall Brown's. We presume they were together as we have no record of any notice from Mrs. Brown not to forward telegrams, etc. August 17th we forwarded Mrs. Brown copies of the cablegram to her at Monte Vista, Colorado. City National Bank, on August 12th, from San Francisco and Mr. Brown was notified by collect telegram to Monte Vista, signed City National Bank. Then she instructed bank to pay Mr. Stonewall Brown $3,000.00 and the other $2,000.00 to remit to her. Bank advised they remitted her $2,000.00; that during meantime Stonewall Brown's account was garnished and his $3,000.00 held up her pending court order. City National Bank has filed and delayed answering until interviewed bank. Pogenphol. Manager."

[1] Under the pleadings, in which Mrs. Brown intervened, seeking to recover the fund as a chose in action and under the answer of the bank, denying that she was entitled to recover and charging fraud on the part of herself and husband, in an effort to defeat the garnishment, and because of the legal presumption that without this explanatory testimony the $5,000 would have been community property, and subject to the debts of Brown, this evidence was clearly admissible, not only as part of the res gestæ but to show the capacity in which she had received and was entitled to hold the money and to rebut the charge of fraud between herself and husband. We think the court properly considered all of the evidence except as to personal references in Kent's letter as part of the res gestæ. 10 R. C. L. 981; 22 C. J. 446, 447, 450, 452.

[2] We think the judgment is supported by the pleadings except in so far as it decrees that the clerk shall not pay the sum except upon the orders of Kent. In this particular the judgment is reformed since Mrs. Brown, as trustee, has the right to recover the fund. According to the letter and telegrams of Kent, it was placed in her hands absolutely, to be invested as she saw fit. He was not a necessary party to the suit. According to the terms of the deposit with the bank, and as between them, she was the absolute owner of the chose in action and entitled to recover it. Frazier v. Moore, 11 Tex. 755; T. W. Ry. Co. v. Gentry, 69 Tex. 625, 8 S. W. 98; Cleveland v. Heidenheimer, 92 Tex. 108, 46 S. W. 30.

[3] The next question to be considered is the proposition that the plea of intervention, filed by Mrs. Brown, in which she joined her husband, pro forma, was not verified, and therefore under V. S. C. S. arts. 299, 300, and 301, it was a nullity and the judgment cannot be sustained. We are cited by appellant to Blum v. Moore, 91 Tex. 273, 42 S. W. 856, in support of the proposition. In our opinion this authority is not applicable. Articles 299 and 300 provide that the plaintiff in garnishment and the defendant in garnishment, if not satisfied with the garnishee's answer, may controvert the same by affidavit in writing, etc. Brown filed a separate answer. The garnishment statute is in derrogation of the common law and is a special proceeding, and, in so far as it refers to the persons and procedure mentioned, has been generally strictly construed, but this rule of strict construction has been abolished by the statute in this state. 4 V. S. C. S. p. 4862, "General Provisions," § 3; Galveston, H. & S. A. R. Co. v. Walker, 48 Tex. Civ. App. 52, 106 S. W. 705; Turner v. Cross, 83 Tex. 218, 18 S. W. 578, 15 L. R. A. 262. The garnishment statute does not attempt to deal with the rights of third parties claiming the property or an interest therein, and it is settled law in this state that third parties may intervene or may be interpleaded by the garnishee for the purpose of having their rights

determined. Looney v. Pope (Tex. Civ. App.) 148 S. W. 1170; Kelley Grain Co. v. English (Tex. Civ. App.) 34 S. W. 651; Wynne v. State Bank of Fort ·Worth, 82 Tex. 378, 17 S. W. 918.

[4] There is no statutory provision requiring interveners to verify their pleadings, and the terms of statutes providing for extraordinary remedies have not generally been extended to include third parties not expressly mentioned in them. We think there is no question that if Mrs. Brown had been interpleaded by the bank she would have been entitled to urge her claim without first denying, under oath, the facts set up by the bank in its answer. While her answer does assert that there is no fund deposited to the credit of Brown, this is an immaterial allegation to her right of action. The material part of her answer is that the bank received the fund as hers. placed it to her credit, and that through the fraud of her husband she was induced to transfer a portion of it to his account, and that, because of the fraud and the circumstances under which she acquired the fund, it is still hers. The plaintiffs in garnishment can have no greater right to the fund than Stonewall Brown has, and, if his apparent right was obtained through fraud, Brown is not entitled to recover. Both the pleadings and evidence support the judgment of the court, and it is affirmed.

· Reformed and affirmed.