No. 2506.

## FREIBERG, KLINE & CO. *v.* J. F. MAGALE.

1. PLEADINGS—EXHIBITS.—When an exhibit is referred to in pleading, and its inspection shows facts contradictory of the allegations in the plea, the exhibit in considering the plea on demurrer, and not the allegations found in the plea, must control.
2. PLEADING.—When a chattel mortgage is referred to in a plea and attached as an exhibit to verify the allegations as to its contents, the fact that the exhibit does not show by indorsement that it was filed for registration with the clerk, is immaterial on demurrer, which raises the question of its proper filing with the clerk, if the petition by distinct averment alleges such filing. The duty of mortgagee as to purchasers, creditors of the mortgagor and lien holders claiming under him ceases when he has in proper time deposited the mortgage with the clerk.
3. CREDITORS AND SUBSEQUENT PURCHASERS.—As to creditors, the deposit of a chattel mortgage with the clerk in compliance with the statute is absolutely necessary to give it validity; as to subsequent purchasers, the mortgage is valid if they have actual notice of its existence.
4. MORTGAGE.—A mortgage can be made to cover future debts, and such a mortgage will be good not only between the parties, but as to purchasers from the mortgagor with notice of the mortgage.

APPEAL from Galveston. Tried below before the Hon. W. H. Stewart.

*Scott & Levi,* for appellants.

*Davis & Davidson,* and *F. D. Minor,* for appellee: That the demurrer was properly sustained, cited Jones on Chattel Mortgages, sections 62, 67, 76, 77, 91, 92, 93, 94, 95, 96, 97, 98; Brothers v. Mundell, 60 Texas, 246; Revised Statutes, Appendix, 15, title "Chattel Mortgages;" Morris v. Tilson, 81 Illinois, 607.

Willie, Chief Justice. Appellants sued S. J. Hourigan and W. S. Davidson, partners under the firm name of "J. F. Magale," to recover the value of certain personal property alleged to belong to the appellants and to have been converted by the appellees to their own use. Demurrers were sustained to the petitions below, and, the plaintiffs having declined to amend, the cause was dismissed. The plaintiffs appealed to this court.

The petition alleged that T. J. Owens, being indebted to plaintiffs in the sum of one thousand seven hundred and fifty dollars, gave his note therefor dated March 29, 1882, payable September 1, 1883, and at the same time executed a mortgage upon the property in controversy to secure its payment, as well as the payment of any other indebtness that might thereafter accrue from Owens to plaintiff by reason of the sale of merchandise or in any other manner; said mortgage to continue in force till canceled in writing by the plaintiffs. A copy of the mortgage was made an exhibit in the petition. It was further alleged that the original mortgage was filed March 30, 1883, with the county clerk of Galveston county, to be kept among the chattel mortgages. After the execution of the mortgage, Owens became indebted to plaintiffs in various ways, and, among others, by reason of their guaranty and payment of the following debts, viz: To Beers & Kenison, twenty-five dollars, assumed April 30, 1885, and paid June 18, 1885; to J. Hourigan, one hundred and twenty-five dollars, guaranteed April 17, 1885, and paid August 3, 1885; to Galveston Gas Company, thirty-six dollars and fifty cents, guaranteed prior to May 8, 1885, paid October 8, 1885. Plaintiffs further alleged that, on May 8, 1885, Owens made a bill of sale of the property to the appellees, which was recorded in Galveston county May 20, 1885, but Owens still retained possession of the property. It alleged that the appellees had actual notice of this mortgage at the time they purchased the goods from Owens. That after May 8, 1885, Owens paid off all the debts due to appellants, with

the exception of the three above mentioned, aggregating one hundred and eighty-seven dollars and thirty-seven cents. The existence of the mortgage in full force at the date of the bill of sale is alleged; also a foreclosure sale under it of the property in controversy, and a purchase thereof by the appellants. Prayer is made for a recovery of the value of the property, etc.

It is claimed by the appellees that the demurrers were properly sustained: First, because the petition does not allege and the exhibit does not show that, after the instrument was executed and acknowledged, it was forthwith deposited in the office of the county clerk of Galveston county. The petition does allege, as we have seen, that on the day after the execution of the mortgage, it was deposited with the county clerk of Galveston county, to be kept among the chattel mortgages. This is what the statute requires to be done in order to give such an instrument validity as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees or lien holders in good faith. (Brothers v. Mundell, 60 Texas, 246.) It is true that the copy attached to the petition does not contain an indorsement as to the filing of the mortgage; but it was not attached in verification of the allegations of the petition as to such filing, but to sustain the allegations as to the contents of the instrument. The petition avers that a mortgage containing certain stipulations was executed by Owens, and refers to the exhibit to establish the averment; it then alleges that the mortgage was deposited with the clerk the next day after its execution, but makes no reference whatever to the exhibit to sustain this allegation. The mortgage sustains the allegations as to its contents. Had it contradicted or been inconsistent with them, the exhibit and not the pleading would control. It was not appealed to for the purpose of showing what was done with the mortgage after it was executed, and hence its absence of any indorsement as to its filing does not disprove the averment of the petition as to its being properly deposited with the county clerk. When the mortgage was thus deposited and filed, the duty of the mortgagee as to protecting creditors of the mortgagor, and purchasers and lien holders claiming under him, ceased, and he was not bound to see that the clerk performed his duty in making the entries and index required by the statutes. Notice dates from the time the mortgage is filed, and not from the time the index and entries are made.

But the petition was sufficient without reference to its allegations as to the filing of the mortgage. The appellees claimed by purchase from Owens, subsequent to the date of the mortgage; and the petition alleges that they had, at the date of the sale to them, actual notice of the existence of the mortgage. In Brothers v. Mundell, supra, it was held by this court that the statute makes a clear distinction between creditors of the mortgagor and subsequent purchasers or lien holders under him. As to the former, the deposit of the mortgage is absolutely necessary to give it validity, but as to the latter, the mortgage is valid if they have actual notice of its existence. The statute requires that they shall be purchasers in good faith—a provision not made in reference to creditors.

But the appellee claims that the mortgage does not secure the debts for which the trustee sold the property; that the mortgage could not secure future debts, and if it could, the future debts contemplated by the mortgage were to be of the same kind provided for in terms by the mortgage. A mortgage can be made to cover future debts, and such a mortgage will be good not only between the parties but as to purchasers from the mortgagor with notice of the mortgage. A mortgage providing for the security of future debts, puts persons dealing with the mortgagor in reference to the mortgaged property upon notice that such debts may exist and bind the property. They must inquire as to this fact, or purchase at their peril. (1 Jones on Mortgages, secs. 364, 370, 372; Senlace v. Webb, 62 Alabama, 271; McZinski v. Emmon, 51 Mississippi, 846.)

The present mortgage provides for the securing of future indebtedness. We do not think that the character of this indebtedness was limited. It was contemplated that debts should accrue by reason of the sale of goods, but not from this cause alone. The mortgage expressly provides that indebtedness of any kind shall be secured by it. It then, to place the matter beyond doubt, provides for debts to accrue in any other manner than had been already stated. It then authorized a foreclosure on failure of Owens to pay at maturity any indebtedness then due from him to the mortgages. These frequent repetitions leave no doubt that the instrument was intended to cover every character of debt that Owens might in future owe to the mortgagees during the existence of the mortgage.

Owens became indebted to Frieberg, Klein & Co. on the thirtieth of April, 1885, on account of there having agreed to pay

for his benefit to Beers & Kenison twenty-five dollars and eighty-seven cents, the amount of a premium upon a policy of insurance, and on the seventeenth of April, 1885, he became indebted to them because they assumed the payment of rent for his benefit. From the allegations of the petition it seems they made these debts their own, which gave them a claim against Owens for the amount thus assumed. These debts were afterwards paid by the appellants. We think the absolute liability and obligation to pay these amounts for the use and benefit of Owens, created such an indebtedness to them as was contemplated in the mortgage, and that the appellees bought with notice of this fact and took the goods subject to the incumbrance thus created in favor of the appellants. It does not seem from the allegations of the petition that Frieberg, Klein & Co. did no more than become sureties for Owens, but that they became primarily liable for the debts.

The other debt arose from a guaranty and before payment after the purchase by the appellees of the goods in controversy; but it will not be necessary for the purposes of the demurrers to inquire whether this state of facts produced such a debt from Owens to the appellants as came within the terms of the mortgage. We conclude that the court erred in sustaining the demurrers to the petition, and for this error the judgment is reversed and the cause remanded.

*Reversed and remanded.*