LIGHTLE *v.* ROTENBERRY.

Opinion delivered December 1, 1924.

1. MORTGAGES—CONSTRUCTION—"ANY OTHER LIABILITY."—A mortgage securing a certain note and "any other liability or liabilities of the grantor already or hereafter contracted" to the mortgagee *held* to include only direct obligations to the mortgagee, and not a note payable to a third party and held by the mortgagee as collateral security.

2. MORTGAGES—ENLARGEMENT BY CONTEMPORANEOUS OR SUBSEQUENT AGREEMENT.—The intention of the parties to a mortgage, as expressed by language employed therein, governs, and this purpose cannot be enlarged by parol agreement, made at the time of its execution or one subsequently made to enlarge the indebtedness secured.

Appeal from White Chancery Court; *John E. Martineau*, Chancellor; affirmed.

*W. D. Davenport* and *Brundidge & Neelly*, for appellant.

*Jno. D. DeBois* and *John E. Miller*, for appellee.

SMITH, J. On January 15, 1920, W. E. Rotenberry executed and delivered to Lasswell & Coble his promissory note, payable to their order, for the sum of $750. Lasswell & Coble were indebted to the Union Bank & Trust Company, of Searcy, in the sum of $700, and they deposited the Rotenberry note with the bank as collateral to their own note. Rotenberry paid the bank $100 on his note to Lasswell & Coble, and the bank indorsed a credit therefor on the Rotenberry note, and applied the payment as a credit on the Lasswell & Coble note. At some time it was agreed that the bank should take the Rotenberry note in satisfaction of the Lasswell & Coble note. The exact date of this agreement does not appear.

On December 31, 1921, the bank loaned Rotenberry $2,391, and to secure this loan took two notes from Rotenberry on that date, one for $1,500 and the other for $891. On the date of this loan, Rotenberry executed a deed of trust conveying certain lands to secure the $1,500 note, and on the same date executed a chattel mortgage to secure the $891 note. The bank at that time held the note

from.Rotenberry to Lasswell & Coble as collateral to the note of Lasswell & Coble, payable to its order.

The deed of trust to the land described the $1,500 note, but did not specifically describe any other indebtedness. The chattel mortgage described the note for $891, but did. not describe specifically any other indebtedness. The deed of trust, however, contained this clause: "It is also agreed that the foregoing conveyance shall stand as security for the payment of any extensions or renewals of the whole or any part of said indebtedness by indorsement on the above mentioned obligation or by the execution of new evidence of indebtedness in lieu thereof; also as security for the payment of any other liability or liabilities of the grantor, already or hereafter contracted, to the said Union Bank & Trust Company, until the satisfaction of this mortgage or deed of trust upon the margin of the records thereof, with interest at the rate of ten per cent. per annum." The chattel mortgage contained a clause substantially similar.

On April 8, 1922, Lasswell & Coble brought suit on the note of Rotenberry payable to their order, and caused an attachment to be issued, which was levied on eight bales of cotton and a Ford touring car. The complaint in this case alleged that Lasswell & Coble were the owners of this note, and the testimony shows that the president of the bank authorized the institution of this suit, as agent for Lasswell & Coble, and the bank executed the attachment bond as surety.

The bank filed an intervention in this suit, alleging its ownership of the $700 note of Lasswell & Coble payable to its order, and that the note sued on of Rotenberry to Lasswell & Coble had been placed in its hands as collateral security to the Lasswell & Coble note, and that, by virtue of this transaction, the bank was the owner of the Rotenberry note. There was an allegation that the attached cotton was perishable, and a prayer that the court order it sold, and the circuit judge made this order.

Rotenberry filed a voluntary petition in bankruptcy, and was adjudged a bankrupt, and received his discharge as such. In this proceeding the bankruptcy court ordered the distribution of the proceeds of the sale of the cotton and some strawberries owned by Rotenberry.

An intervention was filed by the bank in that proceeding, in which the bank alleged its ownership of the note from Rotenberry to Lasswell & Coble, and that the same was secured by the chattel mortgage; but the court, after a hearing on that issue, adjudged that the chattel mortgage did not secure the note of Rotenberry to Lasswell & Coble.

Thereafter the bank brought this proceeding to foreclose the deed of trust given it by Rotenberry, and alleged in its complaint that the note from Rotenberry to Lasswell & Coble was secured by that instrument.

An answer was filed by Rotenberry, denying that the deed of trust secured his note to Lasswell & Coble, and, upon the hearing of this issue, the court found in favor of Rotenberry, but decreed that the land be sold in satisfaction of the $1,500 note of Rotenberry to the bank, and the bank has appealed from that decree.

We are of the opinion that the deed of trust did not include the note from Rotenberry to Lasswell & Coble. It is true the bank held this note at the time of the execution of that instrument, but it held it only as collateral; and if the deed of trust was intended to secure this note, language less ambiguous should have been used to express that intent.

The deed of trust does provide that it shall stand "also as security for the payment of any other liability or liabilities of the grantor already or hereafter contracted to the Union Bank & Trust Company until the satisfaction of this mortgage or deed of trust upon the margin of the records thereof, with interest at the rate of ten per cent. per annum."

This language is unquestionably broad enough to secure any other or additional indebtedness incurred by Rotenberry to the bank, but we think it has reference to

such indebtedness as was directly incurred to the bank, and that this collateral note was not within the contemplation of the parties. A significant fact is that the bank's loans were at ten per cent. This was the interest charged in the note of Lasswell & Coble to the bank, and was also the rate specified in both the $1,500 note and the $891 note, and the language quoted above shows that this was the rate which the bank contracted to charge Rotenberry for all sums secured by the deed of trust, whereas the note from Rotenberry to Lasswell & Coble bore interest at the rate of eight per cent. only.

In the case of *Martin* v. *Halbrooks,* 55 Ark. 569, the mortgage there sought to be foreclosed secured the specified sum named "and all other indebtedness which may then (November 1, 1889) be due." Prior to November 1, 1889, the mortgagee bought a judgment which had been recovered against the mortgagor, and sought to include the amount of this judgment in the indebtedness secured by the mortgage. Chief Justice COCKRILL there said that one may execute a valid mortgage to secure a debt to be contracted thereafter, and that it is not necessary that the amount to be secured should be set out in the instrument, and that an unequivocal agreement in a mortgage that the instrument should secure all indebtedness of whatever nature that might be due from the mortgagor to the mortgagee, at a future date named, would not be invalid between the parties for the want of certainty. But he also said that the words, "and all other indebtedness," would be construed to mean, in the absence of unambiguous language showing a contrary purpose, indebtedness of the same nature as that specifically described and within the purpose of the mortgage.

So here we think the language set out was intended to include all direct obligations of Rotenberry to the bank, of whatever nature, upon all of which an interest charge of ten per cent. would be made, and did not include the note from Rotenberry to Lasswell & Coble, which bore interest at the rate of eight per cent. only,

and was held by the bank merely as collateral at the time the deed of trust was executed.

Of course, the intention of the parties at the time of the execution of the deed of trust, as expressed by the language therein employed, governs, and this purpose cannot be enlarged by parol agreement made at the time of its execution, or one subsequently made, to enlarge the indebtedness which should be secured. *Briggs* v. *Steele,* 91 Ark. 458.

We are reenforced in the view announced by the action of the bank in causing suit to be brought on the note of Rotenberry to Lasswell & Coble by the last-named parties. The testimony shows that this was done by the bank as the agent and representative of Lasswell & Coble, and that the bank executed the attachment bond. It is not likely that the bank would have instituted suit in the name of Lasswell & Coble, as owners of the note, to enforce payment in their name, if it was the owner of the note and had the note secured both by the deed of trust on the land and the chattel mortgage on the personal property. *Cox* v. *Harris,* 64 Ark. 213; *Liddell* v. *Jones,* 76 Ark. 344; *Jennings* v. *McIlroy,* 42 Ark. 236.

It is true the bank intervened in this attachment suit, but it did so not to assert any rights under the chattel mortgage, for the intervention made no reference to the chattel mortgage, but it intervened for the purpose of praying that the attached property be ordered sold under the attachment, and that the proceeds of such sale be paid it as the holder of the note sued on as collateral to the note of the plaintiffs payable to its order.

The decree is correct, and is affirmed.