**A. J. WOOD, Jr., Petitioner,**

**v.**

**PARKER SQUARE STATE BANK,
Respondent.**

**No. A-10867.**

Supreme Court of Texas.

March 23, 1966.

Prothro & Sellers, Wichita Falls, for petitioner.

Nelson, Montgomery & Robertson, Wichita Falls, for respondent.

STEAKLEY, Justice.

On August 1, 1962, the Respondent bank loaned Lincoln Enterprises, Inc., the sum of $125,000.00, evidenced by a promissory note payable in five annual installments. The note was secured by a duly recorded deed of trust lien on 34.6 acres of land in Wichita County. The provisions of the deed of trust regarding future indebtedness are involved here. The first provision quoted below was added to the printed deed of trust form; the last quoted was a part of the printed form:

"* * * (as well as all other indebtedness which may accrue and become owing in the future either as maker, endorser, guarantor or surety (direct or contingent) and all interest charges and attorney's fees thereon, and all extensions and renewals thereof, then this conveyance shall become null and void and these presents shall be released in due form at grantor's expense) * * *."

\*   \*   \*   \*   \*   \*

"And this conveyance is made for the security and enforcement of the payment of said indebtedness and also to secure the payment of any and all other sums of money which may be advanced for or loaned to grantors by the beneficiary, his heirs or assigns."

On January 23, 1963, Petitioner loaned Lincoln Enterprises, Inc., the sum of $50,000.00, evidenced by a promissory note and secured by a deed of trust covering the same land. The lien was expressly subordinated to the August 1, 1962, deed of trust lien held by the respondent bank.

On October 3, 1963, Lincoln Enterprises, Inc., executed a note of $21,248.46, payable to Wayne K. Horton ninety days after date. The note represented funds previously advanced by Horton to Lincoln over a period of several years. Horton was an employee of respondent bank to which he was indebted. On October 26, 1963, the bank purchased the Lincoln note from Horton and a portion of Horton's indebtedness to the bank was paid out of the sum paid Horton for the note. It is undisputed that prior to the purchase of this note the bank had actual knowledge of Petitioner's note and second lien.

In January, 1964, the bank foreclosed its lien on the land and claimed that it also secured the Horton note. By agreement of the parties Petitioner bought the land at the trustee's sale, paid Respondent the balance due on the $125,000.00 note, and placed the

sum of $21,980.00, the sum then due on the Horton note, in escrow pending a judicial decision as to the rights of the respective parties. Petitioner thereupon instituted suit for a judicial declaration that the bank was not "entitled to add the sum due under the note of October 3, 1963, executed by Lincoln Enterprises, Inc., in favor of Wayne K. Horton, to the amount of its first lien on the above property so as to make such sum first and superior to the lien in favor of your Plaintiff [Petitioner here]." Petitioner also alleged that the respondent bank was estopped to so assert the superiority of its lien. Both parties moved for summary judgment and that of the respondent bank was granted. The Court of Civil Appeals affirmed. 390 S.W.2d 835. We reverse the judgments below and render judgment for Petitioner.

The parties appear to have assumed in their pleadings and motions, and in their presentations to the Court of Civil Appeals and to us, that the acquisition by the bank of the Horton note was a future advancement or other indebtedness within the contemplation of the parties and of the terms of the deed of trust which Lincoln Enterprises gave the bank. Petitioner argues here, as he did below, that the bank does not have priority over its second lien to the extent of the Horton note indebtedness because the bank was not obligated to acquire the Horton note and did so voluntarily with notice of Petitioner's second lien. The Court of Civil Appeals decided the case adversely to these contentions upon the authority of Freiberg v. Magale, 70 Tex. 116, 7 S.W. 684 (1888), and its line of cases.

*Freiberg* established the rule in Texas that a mortgage can be made to cover future debts which will be good not only between the parties but as to purchasers from the mortgagee with notice of the mortgage. The mortgage there considered was given to secure a specific debt, together with any other debt the mortgagor might thereafter owe the mortgagees by reason of the sale of merchandise, or in any other manner. The specific holding was that the mortgage included an indebtedness thereafter arising out of the guarantee by the mortgagee of certain debts of the mortgagor, and was not confined to debts arising from the sale of goods to the mortgagor. In referring to the provisions of the mortgage there under review the Court said "These frequent repetitions leave no doubt that the instrument was intended to cover every character of debt that Owens [the mortgagor] might in future owe to the mortgagees during the existence of the mortgage." *Freiberg*, however, is inapposite to the case at bar. The mortgagees there guaranteed the mortgagor's debts in question before they accrued and became owing and before the intervening sale of the mortgaged goods to a third party. The guarantees were immediate advances of credit for the benefit of the mortgagor and, indeed, were at his request.[1] The case did not involve the problem here presented where the senior lienholder has voluntarily purchased a third party debt of the mortgagor in a transaction of no benefit to the mortgagor and not at his request. The rule in such a situation has been stated to be as follows:

"A mortgagee, buying up claims held by third persons against his mortgagor, cannot include them in his mortgage and compel their settlement as a condition to redemption, or have them included in a foreclosure decree, unless with the consent of the mortgagor and in cases where no subsequent purchaser or lien creditor will be prejudiced. Even where the mortgage is so drawn as to cover any demands which the mortgagee may hold against the mortgagor, the mortgagee cannot by virtue of the instrument buy up outstanding claims against the mortgagor and include

---

1. The case came to this Court from the sustainment of demurrers to the petition, and a dismissal of the suit upon a declination to amend, on the ground that the petition did not state a cause of action. The petition alleged that the guarantees in question were made at the special instance and request of the mortgagor.

them in the security, unless a provision that he may do so is clearly and unequivocally expressed, since a stipulation of this character ordinarily can cover only such demands as arise directly out of dealings between the parties to the instrument." 59 C.J.S. Mortgages, § 178 c, p. 224.

We recently held in Moss v. Hipp, 387 S.W.2d 656 (Tex.Sup.1965), that mortgage stipulations securing future indebtedness apply only to those debts which were reasonably within the contemplation of the parties. In *Moss*, Falls borrowed $3,500.00 from Hipp in 1960 to make a down payment on a tractor-trailer. In 1961 Falls borrowed the remainder of the purchase price from the American National Bank and as security for his note to the bank in the sum of $5,471.28 gave the bank a chattel mortgage on the tractor-trailer which contained broad lien provisions securing " * * * any other note or indebtedness now or hereafter by me/us owing at any time during the existence of this mortgage." Falls was unable to meet the payments on the note of the bank whereupon Hipp paid the entire balance and took an assignment of the note and chattel mortgage on December 9, 1962. Moss was a garage mechanic who repaired the tractor on several occasions from October 10, 1961, to August 22, 1962. He was not paid and brought the suit to foreclose his constitutional lien on the tractor. We held that the "dragnet" clause in the chattel mortgage did not secure Hipp's original $3,500.00 loan; in so doing we said:

"Provisions of this type apply only to indebtedness which was reasonably within the contemplation of the parties to the mortgage at the time it was made. See National Finance Co. v. Fregia, Tex.Civ. App., 78 S.W.2d 1081 (writ dis.); Republic Nat. Bank of Dallas v. Zesmer, Tex. Civ.App., 187 S.W.2d 227 (no writ); 15 Am.Jur.2d Chattel Mortgages § 80; 14

C.J.S. Chattel Mortgages § 110. The trial court found as a fact that it was not within the contemplation of the parties to the note and chattel mortgage that the original loan would be secured by the mortgage, and the record does not show as a matter of law that the mortgage was intended to secure indebtedness of that nature. In view of the trial court's finding, therefore, we hold that the mere acquisition by respondent of the note secured by the chattel mortgage did not give him a lien on the tractor to secure the original loan."

The positions of the parties when viewed before the assignment of the unsecured note in the case at bar and before the assignment of the note and mortgage in *Moss* are similar. Here, Lincoln Enterprises as mortgagor, Parker Square State Bank as senior lienholder, Horton as holder of the unsecured note, and Wood as the junior mortgagee, occupy the same respective positions as Falls, American National Bank, Hipp, and Moss. The only factual difference between the two cases is that in *Moss* the holder of the unsecured note purchased the note secured by the mortgage containing the "other indebtedness" clause from the senior lienholder; whereas here, the senior lienholder purchased the unsecured note. These converse situations are basically two sides of the same coin. Here, as in *Moss*, there is no showing that the mortgagor intended that his property be security for anything other than future advances made directly to him or on his behalf, and with respect to dealings between him and the holder of the mortgage.

The cases considering the problem are annotated in 172 A.L.R. 1079 at page 1091. The cases are there noted where the courts have adopted the view that in future indebtedness provisions, often referred to as "dragnet clauses," the mortgage is security for such indebtedness of the mortgagor as may be acquired by the mortgagee.[2] Also

2. Nix v. Hopper, 18 Ala.App. 240, 90 So. 35 (1921); Collins v. Gregg, 109 Iowa 506, 80 N.W. 562 (1899); First National Bank v. Byard, 26 N.J.Eq. 255

(1875); Lamoille County Savings Bank & Trust Co. v. Belden, 90 Vt. 535, 98 A. 1002 (1916).

noted are the cases where the courts have taken the opposite view, namely, that the security of the mortgage containing such provisions does not extend to claims purchased or otherwise acquired by the mortgagee against the mortgagor.[3] The courts adhering to the latter view speak variously in terms of such future indebtedness provisions covering only demands directly arising out of the dealings between the mortgagor and the mortgagee; that the words "and all other indebtedness" will be construed to mean indebtedness of the same nature as that previously described in the instrument; that it is plain the parties contemplated and meant that the additional indebtedness that the mortgage would secure would be one arising out of a transaction *inter partes*; that it was not contemplated or meant that the mortgagee could buy up third party debts which after the purchase would be secured by the mortgage; and that a mortgagee buying up claims held against his mortgagor by third persons cannot have them embraced in, and secured by, his mortgage, or included in the foreclosure decree, unless the language of the instrument provides in the clearest and most unmistakable terms for their inclusion, and unless such stipulation was expressly called to the mortgagor's attention and he assented thereto. These policy expressions are basically sound.

In the case at hand there is no suggestion in the pleadings of the parties, or in their agreed stipulation of facts, or in their affidavits supporting their respective motions for summary judgment, of any agreement regarding future indebtedness other than the agreement represented by the terms of the deed of trust given to the bank. Moreover, all matters considered by the trial court have been brought forward and there are no presumed findings in support of its judgment. Box v. Bates, 162 Tex. 184, 346 S.W.2d 317; and see Rolfe v. Swearingen, 241 S.W.2d 236 (Tex.Civ.App. 1961, writ ref. n. r. e.).

It is clear that the purchase by the bank of the Horton note did not represent a sum of money "advanced for or loaned to" Lincoln Enterprises within the terms of the printed deed of trust form. The further question is whether the added parenthetical provision broadly purporting to extend the deed of trust lien to "all other indebtedness which may accrue and become owing in the future either as maker, endorser, guarantor or surety" includes unsecured third party obligations of Lincoln Enterprises voluntarily acquired by the respondent bank. We hold that it does not. The more reasonable construction of this general language is that it referred to obligations directly arising between Lincoln Enterprises and respondent bank, i. e., where Lincoln became obligated to the bank as the maker of an obligation, or became liable in a secondary capacity in favor of the bank. In any event, these provisions do not constitute an agreement between Lincoln Enterprises and the respondent bank that third party debts then or later owing by Lincoln Enterprises as maker, or in a secondary capacity, to which the bank is a stranger, would be brought within the security of the deed of trust lien upon their voluntary acquisition by the respondent bank. It follows that the Horton note is not included in or covered by Respondent's lien.

The judgments of the trial court and of the Court of Civil Appeals are reversed. Judgment is here rendered that Respondent,

3. Martin v. Halbrooks, 55 Ark. 569, 18 S.W. 1046 (1892); Lightle v. Rotenberry, 166 Ark. 337, 266 S.W. 297 (1924); Berger v. Fuller, 180 Ark. 372, 21 S.W.2d 419 (1929); Provident Mutual Building & Loan Ass'n v. Shaffer, 2 Cal.App. 216, 83 P. 274 (1905); First National Bank v. Combs, 208 Ky. 763, 271 S.W. 1077 (1925); Lashbrooks v. Hatheway, 52 Mich. 124, 17 N.W. 723 (1883); Strong Hardware Co. v. Gonyow, 105 Vt. 415, 168 A. 547 (1933), which distinguished the Lamoille County case, supra note 2. Cf. Poulter v. Weatherford Hardware Co., 166 S.W. 364 (Tex.Civ.App. 1914, no writ hist.); Sullivan v. Murphy, 212 Iowa 159, 232 N.W. 267 (1930).

Parker Square State Bank, is not entitled to add the sum of $21,980.00 to the amount of indebtedness secured by its first lien on the property in question; and that Petitioner, A. J. Wood, Jr., is entitled to retain the sum of $21,980.00 which was placed in escrow by him pending a judicial declaration of the rights of the parties.

SMITH, Justice (dissenting).

I respectfully dissent. The provision added to the deed of trust form should be construed as being an unequivocal and plainly stated agreement that indebtedness such as the Horton note was within the contemplation of the parties at the time the deed of trust was executed. The deed of trust embraced a third party debt such as we have here. The economic welfare of a lender or a borrower should not be jeopardized by a narrow construction of language in an instrument which rather definitely shows that an indebtedness such as Horton's was within the contemplation of the parties to the bank's deed of trust. I respectfully differ with the Court in its construction of the terms of the deed of trust. The second lien is inferior to the bank's lien.