William v. HANNIGAN and Lucille Hannigan, Appellants,

v.

FIRST STATE BANK–WYLIE, Texas, Appellee.

No. 05–84–00674–CV.

Court of Appeals of Texas, Dallas.

Sept. 13, 1985.

Rehearing Denied Nov. 19, 1985.

R. Spencer Shytles, Graham, Bright & Smith, Dallas, for appellants.

Jack M. Pepper, Orr & McWilliams, McKinney, for appellee.

Before GUITTARD, C.J., and AKIN and STOREY,[1] JJ.

---

**1.** The Honorable Charles H. Storey, Justice, Fifth Court of Appeals, Dallas, retired, sitting by assignment.

STOREY, Justice.

William V. Hannigan and Lucille Hannigan filed a declaratory judgment action against First State Bank—Wylie, Texas, seeking a declaration of the rights of all parties under the Bank's security agreement which covered certain shares of stock given as security for a loan made by the Bank to the Hannigans. The Bank contends on appeal that the stock stood as security for the Hannigans' note and, as well, for several pre-existing notes upon which William was solely liable. The Hannigans, on the other hand, contend that the Bank's security interest in the stock extended only to the one note upon which the Hannigans were jointly and severally liable. At issue is the application of the "dragnet" provision contained in the Bank's security agreement. The trial court rendered judgment for the Bank. We hold that the Bank's security interest in the stock extended only to secure the Hannigans' joint note and not to William's existing liabilities. Consequently, we reverse and remand with instructions.

The authorities uniformly hold that where, as here, the contract is unambiguous, parol evidence is inadmissible to prove the intent of the parties. *Kimbell Foods Inc. v. Republic National Bank*, 557 F.2d 491 (5th Cir.1977); *Wood v. Parker Square State Bank*, 400 S.W.2d 898 (Tex.1966). We must therefore determine the intent of the parties from the contract documents and the surrounding circumstances before and contemporaneous with their execution. *See City of Pinehurst v. Spooner Edition Water Co.*, 432 S.W.2d 515 (Tex.1968).

The facts are undisputed. On July 28, 1982, William and Lucille Hannigan executed and delivered to the Bank a note for $75,000. The note was secured by a security agreement, signed by all three parties, granting to the Bank a security interest in 6,012 shares of Boeing Company common stock and 300 shares of General Electric Company stock. Lucille solely owned the stock. The Hannigans are mother and son; consequently, no community debt is involved. Further, the Hannigans were not shown to be engaged in any common, ongoing enterprise. Lucille had never before done business with the Bank. William, on the other hand, had been a long time Bank customer and, at the time of signing the $75,000 note, was indebted to the Bank on eight existing notes totaling about $75,900. The Bank, relying upon the dragnet clause in its security agreement, sought to subject Lucille's stock as security for this existing debt.

The security agreement given to secure the Hannigans' $75,000 note provides in part:

> William V. Hannigan and Lucille Hannigan ... hereinafter called "Debtor" hereby grants to First State Bank—Wylie, Texas, hereinafter called "Bank" a security interest in the following described property: [here follows description of stock]
>
> .     .     .     .     .
>
> This security interest is given to secure: (1) payment of a note dated 7/28/82 executed and delivered by Debtor to Bank in the principal sum of $75,000 payable as to principal and interest as therein provided; (2) future advances to be evidenced by like notes to be made by bank to Debtor at Bank's option; (3) ... (4) all liabilities of Debtor to Bank now existing or hereafter incurred, matured or unmatured, direct or contingent, and any renewals and extensions thereof and substitutions therefor.

Lucille concedes that she is liable for payment of the $75,000 note and that her stock stands as security for it. She insists that her stock does not stand as security for William's existing notes. We agree.

The Bank's security agreement clearly reveals the parties' intent as to the definition of the term "Debtor." The agreement commences "William V. Hannigan and Lucille Hannigan hereinafter called Debtor." Therefore, the provision that "this security interest is given to secure ... (4) all liabilities of Debtor to Bank now existing ..." must refer to the parties' definition of "Debtor," that is, William V. Hannigan and

Lucille Hannigan—not one or either of them.

This was the conclusion reached by the court in an analogous circumstance in *Bank of Woodson v. Hibbitts,* 626 S.W.2d 133 (Tex.App.—Eastland 1981, writ ref'd n.r.e.). In *Hibbitts* the court was concerned with the future indebtedness clause in a deed of trust. It held that the term "mortgagors" as used in the future indebtedness clause applied only to all three of the named mortgagors and not to either or any of them. We reach a like conclusion with respect to the security agreement before us.

We next turn to two separate documents which were dated July 28, 1982, and signed and delivered contemporaneously with the joint note and security agreement. The first is a separate collateral agreement signed only by Lucille. It provides in part:

> The undersigned for a valuable consideration agree with First State Bank—Wylie, Texas, herein called "Holder" as follows: For the purpose of securing said Holder in the payment of all indebtedness now owing to said Holder or which may hereafter become owing to said Holder by the undersigned or by _____ or any or all such parties, the undersigned hereby pledge, transfer, and deliver to said Holder the following, to wit: [here follows description of Lucille's stock].

Because the blank was not filled in, the words "or by _____ or any or all of said parties" are without legal effect.

The next document is the Federal Reserve System Certificate Form U-1. It provides in part:

> I (we) William V. and Lucille Hannigan have applied for an extension of credit from First State Bank—Wylie, Texas, in the amount of $75,000 secured in whole or in part by stock as follows:

Under Part I of the document titled Stock Collateral is described Lucille's stock. Part IV of the document is a certificate "To Be Completed by Bank." The certificate reads:

> 1. State amount of any other credit extended to the customer (S) (a) secured in whole or in part directly or indirectly by any portion of collateral listed in PARTS I and II: $<u>NONE</u> and (b) unsecured credit in excess of $5,000 in the aggregate $<u>NONE</u>.

The certificate was signed by the Bank's president. Thus, the security agreement, the separate collateral agreement, and the Federal Reserve Certificate all serve to negate the conclusion that Lucille's stock was given to secure William's existing debts. We therefore conclude that, as a matter of law, none of the documents can be reasonably interpreted as providing that Lucille's stock was given to secure William's existing debts.

Accordingly, we reverse the judgment of the trial court and remand the case to that court for entry of judgment declaring that Lucille's stock was given to secure the $75,000 note signed by William and Lucille and not to secure any other existing liabilities of William to the Bank.