TORBERT, Chief Justice.
This is a petition for a writ of mandamus directed to Judge Ferrill D. McRae of the Circuit Court of Mobile County. The writ is hereby granted.
On or about May 1, 1981, a general partnership (“Marina Bay”) was formed for the purpose of purchasing and developing certain real estate in Port Walton Beach, Florida, for a condominium project. At all times relevant to the issues at hand, Chandler, the petitioner, was a 25% owner-partner and First Southern Development Corporation, the respondent, was a 75% owner-partner. On May 20, 1981, respondent First Southern Development loaned to the Marina Bay partnership the sum of $2.1 million, represented by a mortgage note payable in one year and secured by a mortgage on the Marina Bay condominium project and by Chandler’s personal endorsement guarantee. A majority of the condominium project units have been released from the mortgage by the action of First Southern Development, but Chandler’s personal guarantee remains to secure his liability on the note. First Southern Development has not allowed the releases to reduce Chandler’s liability in any amount.
In January of 1984, First Southern Federal Savings & Loan Association, a separate and distinct entity from First Southern Development but related in a parent-subsidiary context, loaned to Chandler individually the sum of $50,000 to purchase other real estate. This debt was represented by a personal note due July 16, 1984, and secured by Chandler’s assignment of the interest in Casa Blanca Resort Condominiums owned by Chandler Land and Mortgage Company, Inc. This corporation is wholly owned by Chandler, and the interest in Casa Blanca Resort Condominiums is worth much more than the $50,00 debt it secures.
The major issue in this case involves interpretation of the $50,000 secured note. This note contains a “future advance clause” which broadly directs that
“[t]he collateral and other security described herein is given to secure payment of this Note1 ... and also to secure all future advances made by Bank to Debtor and any and all other indebtedness or liabilities of Debtor to Bank now existing or hereafter arising, due or to become due, absolute or contingent, and whether joint, several or joint and several....”
This clause is also termed a “cross-collater-alization clause,” a “cross-security clause,” or, in some circumstances, a “dragnet clause.”
*362 The note also contains an assignability clause, which states:
“All terms, conditions, covenants, rights and powers herein shall inure to the benefit of and bind the heirs, personal representatives, successors and assigns of the respective parties hereto. Should this contract be assigned to another party, the term ‘Bank’ as used herein shall be deemed to refer to any such assignee.”
Both notes — the $2.1 million note and the $50,000 secured note — are overdue and unpaid. On January 18, 1985, presumably for the sole purpose of collecting on the $2.1 million note, First Southern Development purchased the $50,000 secured note from First Southern Federal Savings & Loan Association and was assigned all rights in the note. Consequently, First Southern Development was the owner of both notes and sought, on the same day, to foreclose upon the Casa' Blanca condominium interest collateral to satisfy not only the $50,000 loan which it originally secured but also Chandler’s liability on the $2.1 million note.
Chandler strongly objects to the foreclosure and forced sale and has tendered $65,000 into the Circuit Court of Mobile County to pay the $50,000 secured note. However, First Southern Development has refused this amount and demands the amount tendered plus Chandler’s 25% liability on the $2.1 million note (a total of $917,363.44) to halt the foreclosure sale and redeem the collateral. This sale was scheduled, then enjoined by a temporary restraining order issued in the eleventh hour, and has been ordered once again. A petition for a writ of mandamus is before us now praying that the order be set aside, the petitioner contending that this use of the cross-collateralization-future advance clause is improper because the two debts were not between the same parties.
Chandler lacks an adequate remedy at law due to the unique nature of the collateral and would suffer an irreparable injury from a foreclosure sale; therefore, mandamus may be used as a remedy to protect a clear legal right. Ex parte Jones, 447 So.2d 709, 713 (Ala.1984); Ex parte Southway Discount Center, Inc., 445 So.2d 898, 899 (Ala.1984). Mandamus does not normally lie to control the exercise of discretion, but it is nevertheless appropriate to compel an official both to exercise his discretion and to exercise it under a proper interpretation of the applicable law. Assured Investors Life Ins. Co. v. National Union Associates, 362 So.2d 228, 231-32 (Ala.1978).
Cross-collateralization and future advance clauses are valid in Alabama. Code 1975, § 7-9-204; Underwood v. Jarvis, 358 So.2d 731, 733 (Ala.1978); First National Bank of Guntersville v. Bain, 237 Ala. 580, 188 So. 64, 66 (1939). Such clauses may secure an indebtedness other than that which is specified in the security agreement. Underwood, supra. Likewise, assignment clauses in security agreements are recognized as valid. Code 1975, § 8-5-20. However, no Alabama court has ever construed these two clauses together to allow such action as has been taken here by a third-party assignee.
Alabama case law holds that future advance clauses are valid to extend “the security to other existing indebtedness or to future indebtedness between the same parties.” Underwood v. Jarvis, 358 So.2d 731, 733 (Ala.1978); First National Bank of Guntersville v. Bain, 237 Ala. 580, 188 So. 64, 66 (1939). The key term “between the same parties” is prevalent in Alabama cases allowing future advances; however, future advance clauses have not been interpreted to allow a third party to obtain security for an otherwise unsecured loan in this manner. This is the recognized policy throughout the United States. See, e.g., Thorp Sales Corp. v. Dolese Bros. Co., 453 F.Supp. 196, 200 (W.D.Okla.1978); Kimbell Foods, Inc. v. Republic National Bank of Dallas, 557 F.2d 491, 495 (5th Cir.1977); First National Bank in Dallas v. Rozelle, 493 F.2d 1196, 1202 at n. 3 (10th Cir.1974); Hudson v. Bank of Leakesville, 249 So.2d 371, 374 (Miss.1971); Wood v. Parker Square State Bank, 400 S.W.2d 898 (Tex.1966); Moss v. Hipp, 387 S.W.2d 656 (Tex.1965); First v. Byrne, 238 Iowa 712, 28 *363 N.W.2d 509, 511-13 (1947); Strong Hardware Co. v. Gonyow, 105 Vt. 415, 168 A. 547, 548 (1933); First National Bank v. Combs, 208 Ky. 763, 271 S.W. 1077 (1925); Lightle v. Rotenberry, 166 Ark. 337, 266 S.W. 297 (1924); Provident Mutual Building Loan Ass’n v. Shaffer, 2 Cal.App. 216, 83 P. 274 (1905).
The respondent contends that this Court is bound by the adverse holding in Hulsart v. Hooper, 274 F.2d 403 (5th Cir.1960). In Hulsart, Hooper mortgaged his goods to Hulsart and five partners in 1952 with a future advance clause contained in the note. In 1957, Hooper gave another mortgage note to Hulsart, individually, which also contained a future advance clause. In 1958, the five partners assigned their rights in the first mortgage to Hulsart. Hulsart was allowed to use the future advance clause of the first mortgage to secure the second mortgage. Both Hulsart and Hooper were parties to each of the two mortgages, although other persons were involved in the first mortgage, and the Fifth Circuit decided this case under the Bain rule of “between the same parties.” This is clearly not the situation in the present case.
Grant Gilmore, a noted authority on the subject of secured transactions, compares the situation at hand to a “case of outright fraud” and labels it a misuse of the future advance clause. 2 G. Gilmore, Security Interests in Personal Property 917-20 (1965). Gilmore states that an overreaching mortgagee could easily exploit the future advance device if such a use is allowed. Gilmore at 918.
Cases which have considered this precise problem have ruled against the use of future advance clauses as attempted here for a wide variety of reasons. The case of Wood v. Parker Square State Bank, 400 S.W.2d 898, 902 (Tex.1966), gives a summation of the different reasons as follows:
“The courts adhering to the latter view speak variously in terms of such future indebtedness provisions covering only demands directly arising out of the dealings between the mortgagor and the mortgagee; that the words ‘and all other indebtedness’ will be construed to mean indebtedness of the same nature as that previously described in the instrument; that it is plain the parties contemplated and meant that the additional indebtedness that the mortgage would secure would be one arising out of a transaction inter partes; that it was not contemplated or meant that the mortgagee could buy up third party debts which after the purchase would be secured by the mortgage; and that a mortgagee buying up claims held against his mortgagor by third persons cannot have them embraced in, and secured by, his mortgage, or included in the foreclosure decree, unless the language of the instrument provides in the clearest and most unmistakable terms for their inclusion, and unless such stipulation was expressly called to the mortgagor’s attention and he assented thereto. These policy expressions are basically sound.”
It is elementary in this contractual setting that the contemplation and intent of the debtor must be considered. Whether other debts between the same parties are secured under a future advance clause depends on the intention of the parties. Malkove v. First National Bank of Mobile, 295 Ala. 191, 195, 326 So.2d 108, 111 (1976); Crescent Credit Corp. v. Union Bank & Trust Co., 51 Ala.App. 683, 686, 288 So.2d 744, 746 (1974). We are unable to find any evidence that Chandler ever contemplated or intended for Chandler Land and Mortgage Company’s interest in Casa Blanca Resort Condominiums to be used as security for the $2.1 million note. Nor can we say that the “consent of the debtor to its inclusion may be inferred.” Gilmore at 932.
We are not to be understood to hold that clear and unambiguous contractual language could not circumvent the policy as stated above. But in this case, we are unable to find such language. The respondent relies on two fineprint, separated, and extremely broad clauses and asks that they be construed together to reach a remedy of *364 foreclosure. This cannot be said to comply with the Bain standard that “[i]f a debtor owes several notes, and gives a mortgage expressly securing one, any intention to cover other existing notes should be quite clear and explicit.” Bain, supra, 237 Ala. at 588, 188 So. at 67.
For the reasons set forth, the circuit court erred in its order allowing the use of the cross-collateralization clause to secure both notes.
WRIT GRANTED.
MADDOX, FAULKNER, JONES, AL-MON, BEATTY, ADAMS and HOUSTON, JJ., concur.