James David **WAGNER**, Appellant

v.

**COMPASS BANK**, Appellee.

No. 05–04–00877–CV.

Court of Appeals of Texas, Dallas.

Aug. 16, 2005.

2. Grand Prairie's original or first answer is not in the appellate record.

John Holman Barr and C. Carlyle Crafton, Burt Barr & Associates, L.L.P., Dallas, for Appellant.

Michael A. Logan, Kane, Russell, Coleman & Logan, P.C., Dallas, for Appellee.

Before Justices WRIGHT, BRIDGES, and RICHTER.

## OPINION

Opinion by Justice WRIGHT.

James David Wagner appeals a summary judgment rendered in favor of Compass Bank. In six points of error, Wagner contends generally that the trial court erred in granting the Bank's motion for summary judgment because it was improper for the bank: (1) to apply the collateral securing the line of credit to the inventory loan; (2) to apply proceeds of the collateral securing the line of credit in excess of Wagner's obligation under the limited continuing guaranty; (3) to apply the collateral securing the line of credit to debt arising from credit card charge backs without evidence of those charge backs; and (4) to apply the collateral for the line of credit to the debt because it violated the Bank's waiver of security in the collateral. We overrule Wagner's points of error and affirm the trial court's judgment.

### Background

In 1998, the Bank extended a $200,000 line of credit to Badge, Inc. ("Badge") in exchange for a promissory note from Badge. The line of credit was subsequent-

ly increased to $250,000. As a condition for increasing the line of credit, the Bank required that Badge put up some collateral. Wagner, a co-owner of Badge, entered into a series of security agreements whereby he provided collateral to secure the line of credit. The security agreements included future advance clauses, providing that the collateral also secured any future obligations of Badge. The collateral consisted of a certificate of deposit and shares of stock in the Tandy Corporation. Due to fluctuations in the stock market, the Bank later required additional shares to be pledged along with Wagner's personal guaranty of $50,000.

Badge later obtained a $75,000 inventory loan from the Bank. Badge's inventory served as security for this loan. John Himelfarb, another co-owner of Badge, signed a personal guaranty for the inventory loan. Badge and the Bank also entered into an agreement whereby the Bank agreed to handle certain credit card transactions for Badge.

Badge defaulted on its obligations. The Bank liquidated enough shares of stock to cover Badge's debt. After Badge's debts were satisfied, the Bank returned the unliquidated stock and the unused money from the liquidated stock to Wagner.

Wagner sued the Bank asserting causes of action for violations of the business and commerce code, conversion, fraud, breach of contract, and DTPA violations. The Bank moved for summary judgment. Wagner filed a cross motion for summary judgment. The trial court granted the Bank's motion and this appeal timely followed.

### Standard of Review

The standard of review in summary judgment is well-established. Tex.R. Civ. P. 166(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990). In re-

viewing a traditional motion for summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr.Prop. Mgm't Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). To prevail on summary judgment, a defendant as movant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982).

### Security Agreements

Wagner contends in his second point of error that the trial court erred in rendering summary judgment because the collateral securing the line of credit could not be applied to the inventory loan. He asserts the loan documents, read together, are ambiguous thus creating a question of fact.

A contract is unambiguous if it can be given a definite or certain legal meaning. *Columbia Gas Transmission Corp. v. New Ulm Gas., Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was signed. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). If the contract is so worded that it can be given a certain or definite legal meaning, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). An ambiguity exists only if the contract language is susceptible to two or

more reasonable interpretations. *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex.2003). Parol evidence is not admissible to render a contract ambiguous, which on its face, is capable of being given a definite legal meaning. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 732 (Tex.1981).

■ The security agreements listed Wagner as the owner of the collateral and Badge as the borrower. The security agreements provide that the collateral will secure the payment and performance of all of "borrower's and owner's present and future ... indebtedness, liabilities, obligations and covenants to lender pursuant to ... this agreement ... [and] all other present or future, written or oral, agreements between borrower or owner to lender (whether executed for the same or different purposes than the preceding documents)."

Wagner contends that when viewed together, the loan documents are ambiguous. First, Wagner contends that if the line of credit future advance clauses serve to cross-collaterize the inventory loan, Himelfarb's inventory loan guaranty was not necessary and, therefore, meaningless. Obtaining Wagner's personal guaranty was the Bank's way of protecting itself up to $50,000, in the event the stock pledged as collateral became worthless.

The Bank sought similar protection with respect to the inventory loan. Again, the stock pledged as collateral for the line of credit also applied to all future debts incurred by Badge, including the inventory loan. If, at the time of default, the stock pledged as collateral for all of Badge's debts had been worthless, the $50,000 personally guaranteed by Wagner might have even been insufficient to cover the debt remaining on the line of credit. In that circumstance, the Bank would have no means to recover the debt remaining on

the inventory loan and the credit card charge backs. To protect itself from this potential scenario, the Bank obtained Himelfarb's personal guaranty so that, in the event of such circumstances, the Bank could look to Himelfarb for payment. Thus, contrary to Wagner's contention, Himelfarb's guaranty is not meaningless and the Bank had sound business reasons for obtaining it.

Second, Wagner also contends an ambiguity exists because the inventory loan provides that it is secured by Badge's inventory and it does not list the previously pledged collateral. The inventory loan does not state, however, that it is secured only by the inventory. No language in the inventory loan or Himelfarb's personal guaranty prevents application of the future advance clause in the security agreements. Wagner submitted Himelfarb's affidavit to show that it was the intent of the parties to the inventory loan that it would be secured exclusively by Badge's inventory. Because the language of the inventory loan is unambiguous, parol evidence is inadmissible.

Moreover, it is not necessary for a subsequent agreement to reference the prior pledged collateral for the future advance clause to apply. *See Magnum Machine & Tool Corp. v. 1st Nat'l Bank of Seaguin,* 545 S.W.2d 549, 551 (Tex.Civ.App.-Eastland 1976, no writ). In *Magnum,* Vahlco Corporation executed a real estate lien note payable to the bank. As security for the note, Vahlco executed a deed of trust in favor of the bank. The deed of trust contained a future advance clause providing that the deed of trust would secure any future obligations of Vahlco. The real estate covered by the deed of trust was subsequently transferred to Magnum Machine & Tool Corp. The deed provided that the conveyance was made subject to the

deed of trust in favor of the bank. *Id.* at 549.

Subsequently, Vahlco executed a $350,000 note payable to the bank. The note stated that it was secured by inventory, retainages, and a "S.B.A. guarantee." *Id.* at 550. Although the note did not mention the deed of trust as security, the trial court found the note was secured by the deed of trust because of the future advance clause contained in the deed. *Id.* at 551. The court of appeals affirmed. *Id.* Thus, the fact that the inventory loan does not reference the stock as security for the loan is irrelevant and does not create an ambiguity.

The supreme court considered a similar future advance clause in *Estes v. Republic Nat'l Bank of Dallas*, 462 S.W.2d 273 (Tex. 1970). The deed of trust executed by Estes provided that it secured the $30,000 note and "all other indebtedness, of whatever kind and character, owing or which may hereafter become owing by Grantors to Beneficiary ..." *Id.* at 274. The supreme court held that the future indebtedness language was unambiguous and, therefore, parol evidence was not admissible to establish the true intention of the parties that the lien was to secure the $30,000 note alone. *Id.* at 276.

■ Having determined the loan documents are unambiguous, we turn now to the scope of the future advance clauses contained in the security agreements. The Texas Business and Commerce Code recognizes the validity of future advance clauses, stating that a "security agreement may provide that collateral secures ... future advances or other value, whether or not the advances or value are given pursuant to commitment." Tex. Bus. & Comm. Code Ann. § 9.204(c) (Vernon 2002). A future advance clause applies to a future *obligation* between the parties if it was in the reasonable contemplation of the parties to the agreement at the time it was made. *Moss v. Hipp*, 387 S.W.2d 656, 658 (Tex.1965). Wagner contends the inventory loan was not within the reasonable contemplation of the parties at the time the security agreements were signed.

In addressing the applicability of future advance clauses, the supreme court has held that a future advance clause in a mortgage does not secure a subsequent debt from the debtor to a third party acquired by the bank from the third party. *Wood v. Parker Square State Bank*, 400 S.W.2d 898, 901 (Tex.1966). In concluding such debt is not within the reasonable contemplation of the parties, the supreme court stated:

> The more reasonable construction of this general language [a future advance clause] is that it referred to obligations directly arising between Lincoln Enterprises [the original debtor] and respondent bank [the original lender], i.e., where Lincoln became obligated to the bank as the maker of an obligation, or became liable in a secondary capacity in favor of the bank.

*Id.* at 902.

The fifth circuit court of appeals considered the application of a future advance clause to a subsequent loan. *See In re Conte*, 206 F.3d 536 (5th Cir.2000). Conte borrowed money from the bank to purchase a car. The loan documents included a future advance clause stating that the security interest in the car secured any other loans Conte had with the bank "now or in the future." *Id.* at 537. Two months later, Conte received a credit card offer from the bank. Conte filled out the application and obtained a credit card. Three years later, Conte paid off his car loan and sought to have the title transferred to him. The bank refused because he owed $7,000 on his credit card. The bank argued the

future advance clause in the car loan documents gave the bank a valid lien on the car to secure the credit card debt. The court held that the bank did have a valid lien on the car to secure the credit card debt which was within the reasonable contemplation of the parties at the time they entered in the car loan. *Id.* at 538–39.

Pursuant to the future advance clauses in this case, the collateral secured the present and any future agreements between the Bank and Wagner and/or the Bank and Badge. The security agreements were between Badge as borrower and the Bank. The inventory loan was between Badge as borrower and the Bank. In line with the interpretation of future advance clauses by both Texas courts and the fifth circuit court of appeals, we conclude the future advance clause contained in the security agreements covers the inventory loan. Thus, we overrule Wagner's second point of error.

## The Guaranty

■ In his third point of error, Wagner argues summary judgment was improper because the amount of collateral subject to disposition by the Bank was limited to the amount of money he personally guaranteed.

Wagner does not cite any case law to support his argument. Instead, he relies exclusively on the language in the guarantee that states:

> Guarantor's liabilities and obligations *under this Guaranty* ("Obligations") shall include all present or future written agreements between Borrower and Lender (whether executed for the same or different purposes), including but not limited to the indebtedness described below but shall be limited to the principal amount of $50,000, together with all interest and all of Lender's expenses and costs, incurred in connection with

the indebtedness including any amendments, extensions, modifications, renewals, replacements or substitutions thereto.

(Emphasis supplied). This language does not limit the Bank's right to liquidate Wagner's previously pledged collateral to $50,000. The security agreements provided that the collateral given to the Bank by Wagner secured the payment and performance of all of Badge's debts. If the collateral pledged had no value at the time that Badge defaulted on its debts, the Bank's recovery from Wagner *personally* would have been limited to $50,000.

We conclude Wagner's third point of error is without merit and is, therefore, overruled.

## Credit Card Charge Backs

In his fourth point of error, Wagner contends summary judgment was improper because the Bank did not present any evidence of the existence of the credit card charge backs attributable to Badge. Contrary to Wagner's assertion, the Bank did present such evidence in an exhibit attached to its supplemental motion for summary judgment. The exhibit consisted of seventeen pages of documents listing Badge's credit card charge backs that were processed by the Bank. Accordingly, we overrule Wagner's fourth point of error.

## Waiver of Security Interest

Wagner contends in its fifth point of error that the trial court erred in granting summary judgment because the Bank waived its security interest in Badge's inventory by refusing to take possession of the inventory in satisfaction of the inventory loan. He contends that such waiver prevented the Bank from applying any other proceeds to satisfy the inventory

loan. At the summary judgment hearing, however, counsel for Wagner specifically waived this argument:

> The Court: Okay. Well, that's not responded to, so are you giving up on those points?
>
> [Counsel]: With respect to the waiver and the DTPA, uh, well, I guess since we didn't file a response, we don't have much argument.
>
> The Court: Okay.
>
> [Counsel]: I'm giving up on the waiver argument.

We conclude Wagner waived this claim. We overrule his fifth point of error.

### Public Policy

■ In Wagner's final point of error, he contends the trial court's summary judgment contravenes the intended policy of facilitating investment and financial certainty. Wagner contends that the Bank should not be allowed to "cherry-pick" the collateral to apply to a defaulted loan. This practice, Wagner argues, prevents business owners from having "certainty in knowing what collateral secures what obligation." Wagner argues that investors must be able to gauge the amount of their exposure in a particular investment. The documents in the case were clear that the collateral pledged by Wagner secured not only the line of credit but also any future obligations of Badge. Wagner knew the amount of collateral he pledged. He also knew the amount for which the bank could hold him personally liable.

We overrule Wagner's sixth point of error.[1] We affirm the trial court's judgment.

---

1. Wagner's first point of error is a general point of error that the trial court erred in granting summary judgment. In light of our disposition of Wagner's other points of error, his first point of error is likewise overruled.